[Civ. No. 3636. Third Appellate District.—December 3, 1928.]

GLENA SYFERT, Respondent, v. FRED H. SOLOMON, Appellant.

Warren L. Williams, Seymour S. Silverton and Anderson & Anderson for Appellant.

Jones, Hoyt & Rifkind and Bicksler, Smith & Parke for Respondent.

TUTTLE, J., *pro tem.*—This is an action to recover damages for breach of contract on the part of defendant to marry plaintiff. The trial was had before a jury and damages in the sum of $40,000 awarded plaintiff. The appeal is from the judgment upon the verdict.

Upon the oral argument appellant moved the court for permission to offer proof that respondent herein was a married woman during all the times mentioned in her complaint. The trial was had before a jury, and under such circumstances an appellate court is not permitted to receive additional evidence of this character or to make any finding thereon.

The complaint, filed March 2, 1924, alleges, in substance, the following facts:

That plaintiff, respondent herein, and defendant, appellant herein, became acquainted on or about September 8, 1916; that on or about *October 5, 1916*, there was a mutual promise and acceptance of marriage, no definite time therefor being fixed at that time. It is further alleged that at all times since the making of said agreement of marriage, respondent herein, plaintiff below, was manager of appellant's dance-hall; that she directed the affairs of said dance-hall and had charge of the finances thereof and managed and looked after the same, during which time appellant, defendant below, realized therefrom a net profit of $500,000.

It is further alleged in said complaint that during the month of *January, 1917*, plaintiff requested defendant to carry out his agreement to marry her, to which defendant

replied that they would go to Santa Ana, California, and be married, but later said to plaintiff that they had better wait; that said parties discussed their marriage from time to time; that during the early part of November, 1918, when defendant's mother was ill and not expected to live, defendant stated to plaintiff that if his mother died, he would immediately marry her.

Plaintiff further alleged that on November 30, 1918, in addition to her work as manager of appellant's place of business, she also took charge of the affairs and management of his home, and continued so to do until the second day of December, 1924.

That defendant's mother died on or about April 19, 1920, and on *May 1, 1920,* plaintiff asked defendant to marry her, to which he replied that he would do so before long, but would not agree upon a definite date. That while respondent, plaintiff below, was ill and on or about the twenty-sixth day of July, 1924, in the California Hospital in Los Angeles, California, the defendant, appellant herein, promised to marry her as soon as she was able to leave the hospital.

That on the seventeenth day of September, 1924, and again on December 6, 1924, *respondent demanded of appellant that he marry her,* and that appellant did for the first time decline and refuse to marry her.

It is further averred in said complaint that the plaintiff, respondent herein, is now able, ready, and willing to marry the defendant, appellant herein; that she has given to him all of her love, care, and attention and services, and looked after, managed, and cared for his business and home.

It is further averred, on information and belief, that defendant made such promises to marry the plaintiff without any intention on his part of performing or carrying out the same, and to gratify his desires and induce the plaintiff to manage his home and business; further, that plaintiff was deprived of an opportunity to marry anybody else during the period of time she kept company with the defendant, and that defendant is worth a sum of money in excess of $500,000, and judgment was prayed for in the sum of $50,000 actual damages and $25,000 dollars punitive damages.

Defendant below interposed a demurrer to and motion to strike from said complaint, which demurrer was overruled and the motion to strike denied; defendant answered specifically denying said allegations and pleaded, by way of affirmative matter: 1. Unchastity of plaintiff; 2. Statute of frauds; 3. Statute of limitations.

It will be observed that the complaint sets forth five separate promises to marry. The first promise is October 5, 1916, and alleged breach was on December 6, 1924 (over eight years from the date of the first alleged promise).

The respondent, at the time she first met appellant in 1916, was twenty-eight years of age. She testified that she had previously lived in St. Louis; that from the time she was twenty years of age until she was twenty-eight years of age, she had been frequently in the company of one Zieggenheim; that she had had frequent sexual relations with him, and that he had provided her with clothing, jewelry, and had paid her board for a portion of said period; that after said party had transferred his affections to another, she had left him and come to California. She also testified that she informed appellant of such facts at the time he asked her to marry him on or about October 5, 1916.

Plaintiff further testified that she had sexual relations with defendant a few days after they first met, and that this conduct persisted intermittently for almost eight years. She also testified that she was intimate with defendant prior to the first promise of marriage set forth in her complaint. During all of this time defendant made her numerous presents, including a $900 fur coat and other wearing apparel.

The following instructions were given at the request of plaintiff:

''If you find from the evidence in the case that the plaintiff is entitled to recover and has sustained actual damages then the amount of such actual damages rests in the sound discretion of the jury, subject to the limitations contained in the other instructions given you and to the further limitation that the actual damages, if any found by you, are not to exceed the sum of fifty thousand dollars, as alleged in plaintiff's complaint; and if you further find that the defendant made the promises of marriage to the plaintiff, as alleged in plaintiff's complaint, not intending to keep the

same, and that he deceived and trifled with plaintiff's feelings, then you in your discretion may allow such additional damages in favor of the plaintiff by way of aggravation or damages for any such conduct on his part in an amount to be determined by you, but not exceeding the sum as alleged in plaintiff's complaint.

"If you should find for the plaintiff under the evidence and these instructions, you must find some compensatory damages, but the matter of punitive damages is entirely in your discretion. You may allow them in case you find malice as heretofore defined, or you may refuse to find them, no matter how much malice you may find there was in the acts of the defendant complained of.

"In the event your judgment is in favor of plaintiff, then, in fixing the amount of damages you may give to the plaintiff compensation for injury, if any, to her feelings, affections and wounded pride as elements of damages sustained by her on account of the breach of said contract to marry; also the length of time the engagement continued between the parties, the probable loss, if any, of a chance to become engaged to a third party, and the general loss and damage, if any, sustained by plaintiff by reason of the fact that defendant did not carry out his contract. And in estimating the amount of damages to be allowed to plaintiff in the event you find she is entitled to recover, you may take into consideration the question as to whether or not the defendant in promising to marry her acted in good faith, intending at the time to carry out his contract, or whether such promise was made for the purpose of trifling with the plaintiff and enjoying her company and inducing her to give him her time and companionship, to the exclusion of other men for his own satisfaction and enjoyment without at the time intending to live up to such agreement; and if you find that the defendant did, under promise of marriage, so deceive and trifle with the feelings of the plaintiff, you may in your discretion award additional damages therefor; also the extent, if any, of plaintiff's devotion to and love of defendant, her lack, if any, of independent means, her loss of marriage, and her altered social condition, if any, caused by defendant's breach of contract."

It is contended by appellant that these instructions are erroneous, for the reason that they submit to the jury the

question of exemplary damages and that, under the pleadings in the action, such damages cannot be recovered.

The only allegation of the complaint which could be a basis for the introduction of evidence and instructions upon the subject of punitive or exemplary damages is the following:

"That plaintiff is informed and believes and on such information and belief alleges that the defendant at the time he made said promises and agreements to marry this plaintiff, as herein set forth, the same were fraudulently made without any intention on his part of performing or carrying out the same and for the purpose of gratifying his own desires and to induce this plaintiff to look after, manage and care for his business and home interests, as hereinbefore set forth."

No attempt is made by plaintiff to allege seduction, nor is there any averment of malice upon the part of defendant.

Actual fraud consists in "a promise made without any intention of performing." (Civ. Code, sec. 1572, subd. 4.) The definition of exemplary damages and the cases in which they are allowed are set forth in the Civil Code as follows: "In an action for the breach of an obligation not arising upon contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." (Civ. Code, sec. 3294.) It is also provided in section 3319 of the same code that "the damages for the breach of a promise to marry rest in the sound discretion of the jury."

In our own jurisdiction there is one case where the matter seems to have been discussed, *Lanigan* v. *Neely,* 4 Cal. App. 760 [89 Pac. 441]. That case involved the question as to whether allegations in the complaint for breach of promise, which showed seduction, were a statement of a separate cause of action *ex delicto*, it being contended by defendant that such was the fact, and that the cause of action, *ex delicto* and *ex contractu,* had been improperly united. The appellate court, through Mr. Justice Hart, held that the allegations as to seduction were made for the purpose of showing aggravation of damages, and that only one cause of action for breach of contract was stated. In discussing

the nature of an action for breach of contract, Mr. Justice Hart said: "It is said in some of the early cases that, although an action upon a breach of contract of promise of marriage is *assumpsit* in form, it has always, as to measure of damages, been classed as a tort. And it must be admitted that the effect upon the complaining party resulting from the injury in cases of breach of promise, unaccompanied by seduction, although the wrong arises primarily through the breaking of the contract, so nearly approximates that resulting from acts of strictly a tortious character, that the former are differentiated from actions of tort more in the degree and extent of the injury than from any actual or intrinsic distinction." While matters disposed of in the foregoing quotation may not have been strictly necessary to the decision, we are of the opinion that the essential principles therein stated are sustained and supported by the weight of authority found in the text-books, encyclopedias, and cases from other jurisdictions.

It is stated in 9 C. J., page 381, section 100, on the subject of punitive or exemplary damages that "an action for breach of promise is an exception to the rule that exemplary or punitive damages should not be allowed in actions on contract, and with regard to the measure of damages it has always been classed with actions of tort." In Sutherland on Damages, volume III, page 2897, describing the nature of this action, the author says: "While it is in form upon contract, and in truth based upon it and its breach, the damages are governed by principles which apply to actions for personal .torts." Ruling Case Law, volume IV, page 155, states the rule to be "an action for a breach of the contract to marry, though in form an action of *assumpsit*, is in fact and always has been, since it was sustained at common law, in respect to an action for damages, really in the nature of tort. The weight of judicial opinion seems to be that this particular action forms an exception to the general rules which cover contracts, and that damages are not limited to the consequences of the breach." The rule in New York is laid down in *McKane* v. *Howard*, 202 N. Y. 181 [Ann. Cas. 1912D, 960, 95 N. E. 642], as follows: "As to the measure of damages, the action (breach of contract to marry) has always been classed with actions of tort, as libel, slander, seduction, criminal conversation, etc." In

Illinois, the court states that "the general rule that exemplary or vindictive damages cannot be recovered in actions *ex contractu*, does not apply to an action to recover damages for breach of contract to marry." (*Jacoby* v. *Stark*, 205 Ill. 34 [68 N. E. 557].) The case of *Hivley* v. *Golnick*, 123 Minn. 498 [Ann. Cas. 1915A, 295, 49 L. R. A. (N. S.) 757, 144 N. W. 213], is a well-considered and exhaustive opinion in strict harmony with the foregoing authorities.

We conclude, therefore, that this action is, so far as the matter of damages is concerned, to be classed as a tort and that exemplary damages, if properly pleaded, may be recovered therein and that it is, in the matter of damages, an action for the breach of an obligation not arising from contract, as such words are used in section 3294 of the Civil Code.

The first instruction quoted, *supra*, was correct. It merely follows the language of the complaint upon the question of fraud and authorizes additional damages if the jury found those facts to be true.

The second instruction quoted involves a more serious question. It authorizes the jury to find punitive damages in case they find *malice*. We have pointed out that the complaint alleges no facts which would constitute malice, which is a wrongful act done intentionally without just cause or excuse. (*Tingley* v. *Times-Mirror*, 151 Cal. 1 [89 Pac. 1097].) No recovery of exemplary damages can be had unless such damages are alleged in the complaint. (*Tingley* v. *Times-Mirror*, *supra*; *Bailey* v. *Dale*, 71 Cal. 34 [11 Pac. 804]; 8 Cal. Jur., p. 892, sec. 129.) As malice was not made an issue in this case, either through pleadings or otherwise, it was error for the court to instruct the jury upon that question, and to instruct them that they might base a verdict for punitive damages thereon.

The court also defined malice in an instruction to the jury as follows: "Malice is a state of mind, and imports a wish to vex, annoy or injure another person." As we have pointed out, legal malice is far more than a state of mind. There must be a wrongful act on the part of the person against whom the charge is made, and that act must have been done without legal right. One may have malice in his mind, but unless that malice is evidenced by some

overt act, no recovery of damages can be had. One cannot be penalized for harboring evil thoughts.

These two instructions undoubtedly led the jury to believe that the issue of malice was before them. It was prejudicial to defendant for the court to intimate to the jury, as it did, that they might find punitive damages based upon this issue.

The third instruction quoted in the first part of this opinion was correctly given, and it was based upon and followed substantially the charge of fraud as set forth in the complaint.

The following instruction is complained of: "If you find that the plaintiff and defendant became acquainted about the year 1916 and that commencing during that year and continuing until the month of December, 1924, the plaintiff and defendant on numerous occasions and continuing during said period made mutual promises and agreements to marry each other, then each or either of said agreements, if found to be valid by you under the instructions given in this cause, is sufficient for the purpose of supporting plaintiff's cause of action except the one which it is alleged was made that defendant would marry the plaintiff immediately after the death of his mother; and if you should find on account of any defense pleaded by the defendant that any or either of the earlier promises to marry as alleged in plaintiff's complaint were not binding because they were barred by the statute of limitations or because of uncertainty or alleged unchastity of the plaintiff the fact that any or either of such defenses might be good as against one or more of said earlier promises would not affect plaintiff's right to recover on account of a breach of a later promise of marriage which was not affected by either or any of said defenses, provided you believe said later promise was made as alleged."

It will be noticed that the plaintiff's complaint contains five separate promises of defendant to marry her. It is alleged that on October 5, 1916, the plaintiff and defendant mutually promised and agreed to marry each other, no definite date therefor being agreed upon at that time; in 1917, a renewal of the promise to marry, with no definite date being agreed upon; a promise to marry in the early part of November, 1918, upon the death of defendant's

mother; a promise of marriage in May, 1920, said promise to be "before long," and a promise to marry on July 26, 1924, "as soon as plaintiff was able to leave the hospital." It will be noticed that with the exception of the promises of November, 1918, to wit, conditional upon the death of defendant's mother, and of July 26, 1924, upon plaintiff being able to leave the hospital, no definite date for the marriage was ever agreed upon.

It is claimed that the instruction is faulty because three of said promises to marry were void as a matter of law, and the jury should have been so instructed, and that the court erred when it instructed the jury that each or either of said agreements (except the one which was contingent upon the death of deceased's mother) is sufficient to support the cause of action. The only valid promise, appellant asserts, is the one of October, 1916.

While the complaint alleges a number of sequent promises to marry, it will be observed that the breach is alleged to have occurred upon September 17, 1924, and to have been repeated upon December 6, 1924. We are inclined to the view and here hold that a reasonable construction of the complaint would be that it contains but one cause of action. "Although a contract to marry is evidenced by several promises made at different times, there is but a single contract and a breach thereof is but one breach of one contract." (9 C. J. 330.) As stated in *Garmong* v. *Henderson,* 112 Me. 383 [92 Atl. 322], "a contract to marry is evidenced ordinarily by many promises at different times. Such is the nature of it. So that if defendant on March 10, 1920, and again on November 6, 1910, promises to marry plaintiff, to show that he also made the same promise in August, 1909, does not, on the face of it, show a separate and independent contract. If these parties ever promised to marry each other, no matter how many times the promises were repeated, altogether they constitute but one contract. If, then, the defendant finally refused to perform his part of the contract, it was but one breach and constituted but one cause of action. Sometimes causes of action are confused with the facts and circumstances which give rise to them."

Respondent quotes with approval from the case last cited, and states that, "we believe that there could be but *one*

*valid and existing contract* of marriage between the parties at the same time, but as is also stated in said case 'a contract to marry is evidenced ordinarily by many promises at many different times.'"

It was error, therefore, for the trial court to instruct the jury that they might predicate a verdict upon any of the several promises mentioned in the complaint, as the jury were led to believe that at least four breaches of contract may have been committed by defendant, while the complaint and the evidence show there was but one contract and one breach.

It is unnecessary to decide the question of the sufficiency of each of said promises. While one of said promises, considered alone, might not justify a verdict, it might still be evidence of the contract sought to be proven. So, even though the statute of limitations may have barred a recovery upon one or more of said promises, if they are considered as together constituting one contract, the time for commencing the action would run from the date of the breach. The complaint shows that the action was commenced within two years from the date of the breach, and within the time allowed by law.

What we have said with reference to the several promises constituting but one contract is based entirely upon the proper construction to be given to the complaint herein. The learned trial judge took what we hold to be an erroneous view of the complaint, when he instructed the jury that they might find for plaintiff upon any one of the alleged promises. If we accept his construction of the pleading, the instructions would still be error, because action upon one of the promises, at least (that of October, 1916), was barred by the statute of limitations.

The court instructed the jury as follows: "If you find from the evidence that the plaintiff and the defendant herein did enter into any contract of marriage, but that the performance of such or any such contract was contingent upon, the death of defendant's mother, then such contract, if any such was made upon any such contingency, was void and of no effect, and no recovery can be had by plaintiff upon any such contract even though you should find that any such was made."

The foregoing instruction, referring obviously to the promise of January, 1917, should not have been given. As we have pointed out, the pleadings clearly indicate and counsel for defendant, who drew them, admits that the several promises set forth therein constitute but one contract and should not be considered separately.

The instruction set forth on page 148 of appellant's brief correctly stated the law. No one promise was singled out by the court. The jury were simply told that if they found that defendant had agreed to marry plaintiff, as set forth in the complaint, the statute of limitations would not commence to run until a reasonable time to perform the contract had elapsed, where no time was fixed for performance.

The instruction found on page 149 of said brief was not correct, in that a particular promise was referred to as the basis for a verdict, whereas, as we have pointed out, the various promises should have been considered, in effect, as one. The same is true of the instruction found on page 152 of said brief.

The demurrer to the complaint was properly overruled and the motion to strike correctly denied, for the reasons we have indicated.

While defendant was upon the witness-stand and under cross-examination, he was compelled, over proper objection, to relate various acts of sexual intercourse with plaintiff. The questions asked were not cross-examination. Such acts were committed in privacy and secrecy. In the absence of allegations in the complaint constituting seduction, such evidence is not admissible for any purpose. (*Smith* v. *McPherson*, 176 Cal. 144 [L. R. A. 1918B, 66, 167 Pac. 875]; *Wrynn* v. *Downey*, 27 R. I. 454 [114 Am. St. Rep. 63, 8 Ann. Cas. 912, 4 L. R. A. (N. S.) 615, 63 Atl. 401].) We cannot say how much effect this improper testimony had upon the minds of the jurors. It will not be presumed that they disregarded it, and the fact that it was held competent by the court would, at least, lead the jury to believe that they might consider the same in arriving at their verdict. "Innate chivalry of most jurors prompts them very often to find in favor of a woman in an action of this kind, but they ought not to base the measure and recovery of damages sustained upon evidence of sexual intercourse alone, when

she has not testified that her consent to the intercourse was induced by reliance upon defendant's promise to marry." (*Stamm* v. *Wood*, 86 Or. 187 [168 Pac. 73].)

Numerous other assignments of error are made with respect to rulings upon evidence. We have examined these, and conclude that the trial court disposed of them correctly.

In view of the fact that certain testimony, prejudicial to defendant, was admitted, and certain instructions were erroneously given, we do not deem it would serve any useful purpose to pass upon the question of the excessiveness of the verdict. The record of another trial, if there is such, must necessarily differ from this one.

We are impelled to the conclusion that through the errors we have pointed out, defendant was not afforded a fair trial and that the judgment must be reversed, and such is the order.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January, 2, 1929, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 31, 1929.

Preston, J., and Curtis, J., dissented.