[Civ. No. 17653.   Second Dist., Div. Two.   May 15, 1950.]

BESSIE MACK, Respondent, v. LEON M. WHITE, Appellant.

Nat Wilk for Appellant.

Anna Zacsek and Henry Silver for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff in an action to recover damages from defendant for having obtained money from plaintiff through fraudulent representations, defendant appeals.

Prior to the events narrated herein plaintiff was married to a Mr. Mack and was still married when in 1934 she and defendant commenced living together as husband and wife and so continued until February, 1948. She did not procure a divorce from her former husband until 1937. In 1939 she and defendant purchased a piece of real property for $2,800, plaintiff making the down payment of $350, and defendant making all the monthly payments thereafter until the property was sold in 1947 for $8,000. By the transaction they each netted $3,229.92. At the time the property was purchased defendant was employed by the Works Progress Administration and for that reason title to the property was taken in plaintiff's name. Repeatedly during the time they lived together defendant promised to marry plaintiff and finally when she became insistent that he do so, he said he would when she put the title to the property in their names jointly. In 1946, in order to show her readiness "for sacrifice," plaintiff went to a notary public and signed a purported deed in which the property was placed in the name of plaintiff and defendant as joint tenants. In February 1947, the property was sold and plaintiff gave defendant half of the proceeds of the sale in consideration of his promise to marry her. Defendant admitted that he did not at any time intend to marry plaintiff and on February 2, 1948, plaintiff left defendant and thereafter demanded return of the money which she had given him in consideration of his promise to marry her.

■ *Questions:* First: *Since the allegations of fraud in the complaint were in general terms and not of specific facts, did the complaint fail to state a cause of action against defendant for obtaining money from plaintiff through fraudulent representation?*

This question must be answered in the negative. It is the general rule that where a complaint alleges fraud in general

terms and the parties go to trial without filing a special demurrer to the complaint on the ground that fraud has not been sufficiently alleged, such infirmity in the complaint is waived and may not be successfully urged for the first time on appeal. (*Campbell* v. *Genshlea*, 180 Cal. 213, 218 [180 P. 336]; *McKay* v. *New York Life Ins. Co.*, 124 Cal. 270, 273 [56 P. 1112].)

In the present case the complaint alleged fraud in general terms, to wit: ". . . defendant fraudulently represented to plaintiff that he had the intention of entering into a valid marriage relationship with her, if plaintiff would authorize defendant to receive one half of the sales price for said property, deposited at the escrow department of the Security First National Bank of Los Angeles . . ."; and that "On or about the same time, plaintiff on the strength of defendant's promise and relying on his representations, plaintiff gave her consent and authorization that defendant could receive said money."

Neither a general nor special demurrer was filed to the complaint, and the parties went to trial on the theory that the complaint stated a cause of action for fraud. Hence the above rule is applicable and the defendant may not at this time urge that the complaint failed to state a cause of action.

Second: *Was plaintiff's cause of action outlawed by the Anti-Balm Statute, Civil Code 43.5(d)?*[1]

This question must be answered in the negative. The present action is not one for breach of promise to marry but is an action for obtaining money upon fraudulent representations. Hence section 43.5(d) of the Civil Code has no application to the case.

Third: *Was plaintiff's cause of action barred by the statute of frauds, section 1624 of the Civil Code?*[2]

This question must also be answered in the negative. The section of the statute of frauds relied on by defendant is applicable to actions *ex contractu*, while the present action is not founded upon a contract but is an action *ex delicto* to recover damages for fraud perpetrated by defendant.

Fourth: *Did the evidence support the findings that plaintiff relied on defendant's promise to marry her before*

---

[1] Section 43.5 of the Civil Code reads in part as follows: "No cause of action arises for: . . . (d) Breach of promise of marriage."

[2] Section 1624, subdivision 3, provides: "The following contracts are invalid, unless some note or memorandum thereof, is in writing subscribed by the party to be charged or by his agent: Subdivision 3. An agreement made upon consideration of marriage other than a mutual promise to marry."

*dividing with him the proceeds from the sale of the property which she had purchased?*

This question must be answered in the affirmative. Plaintiff testified that her reason for giving him half of the sale price of the property was because she believed his representations that he would marry her if she did so.

Fifth: *Did the fact that plaintiff had executed a deed to the property showing the title in herself and defendant as joint tenants deprive her of the right to recover damages resulting from the false representation made by defendant?*

This question must be answered in the negative. Plaintiff testified that at the time she executed the deed she did not intend to make a delivery thereof to defendant; that she did it to show her good faith and in reliance upon his promise to marry her. Likewise she testified that defendant told her the deed was not any good and that he had burned it. Clearly such testimony supports the trial court's implied finding that the deed was never delivered and was therefore of no effect.

Sixth: *Did the fact that plaintiff and defendant lived in a meretricious relationship for a number of years bar plaintiff's cause of action?*

This question must likewise be answered in the negative. Not alone did this fact fail to deprive plaintiff of her cause of action for the wrong perpetrated upon her by defendant, but it tended to explain why she may have believed his promise to marry her. The fact that she had so much affection for him would tend to prove that she relied implicitly on his promises and therefore should not be barred from recovering damages for the fraud practiced by defendant.

Seventh: *Does public policy prevent plaintiff from enforcing her cause of action?*

This question must also be answered in the negative. The concubinary relationship between the parties is not here the subject of investigation. The sole issue presented by the pleadings was whether defendant had perpetrated a fraud upon plaintiff. The evidence disclosing that he had done so to her damage, their personal relationship is utterly immaterial.

Eighth: *Did the trial court commit error in the admission of evidence?*

This question must be answered in the negative. Defendant contends that the trial court received evidence which was outside the issues presented by the pleadings. However, he

does not indicate that such evidence was in any way prejudicial. Hence pursuant to the mandate of article VI, section 4½ of the Constitution of the State of California we must disregard any such alleged error.

Ninth: *Did plaintiff meet the burden of proof of showing fraud by clear and convincing evidence?*

This question must be answered in the affirmative. The rule is established in California that where, as in the instant case, there is conflicting evidence as to whether defendant made fraudulant representations which were relied upon by plaintiff, a question arises for the determination of the trier of fact whose decision upon conflicting or contradictory evidence is binding upon an appellate court. (*Beeler* v. *American Trust Co.*, 24 Cal.2d 1, 7 [147 P.2d 583].) This rule is applicable in the present case.

Affirmed.

Moore, P. J., and Wilson, J., concurred.

A petition for a rehearing was denied May 26, 1950, and appellant's petition for a hearing by the Supreme Court was denied July 13, 1950. Schauer, J., voted for a hearing.