[L. A. No. 23808.   In Bank.   June 4, 1956.]

ENA DOROTHY LANGLEY, Appellant, v. SPENCER SCHUMACKER, Respondent.

Maurice Rose for Appellant.

Crawford & Baker, Ames Crawford and James H. Lyons for Respondent.

SHENK, J.—This is an appeal from a judgment entered following an order sustaining a demurrer to the plaintiff's second amended complaint.

Ena Langley, the plaintiff, brought this action to recover damages from the defendant, Spencer Schumacker, upon a cause of action for fraud. In her second amended complaint the plaintiff alleged that she was employed for some time prior to March 31, 1953, by an insurance company as personnel director and as secretary to its president, earning a salary which, by January, 1953, amounted to $425 per month, plus certain fringe benefits; that on or about January, 1953, the defendant fraudulently induced her to resign her position on representations that he intended to marry her, to consummate the marriage, and to maintain a normal and natural marital relationship; that in reliance upon such representations she resigned her position on March 31, 1953, and on April 17, 1953, she and the defendant went through a ceremony of marriage; that the defendant's representations were untrue and known by him to be untrue; that he never intended in good faith to consummate the marriage or maintain a normal and natural marital relationship, but on the contrary, that his preconceived plan and intention was not to consummate the marriage or maintain a normal and natural marital relationship, and that after the ceremony he refused to consummate the marriage by having marital intercourse and stated that he would never cohabit with her. On January 29, 1954, the plaintiff obtained a decree of annulment upon her complaint charging fraud in that the defendant had secretly intended not to consummate the marriage, that he had not consummated it, and that he never intended to do so. After that decree became final the plaintiff commenced this action to recover damages for the fraud thus practiced on her. Her action for damages is entirely independent of the annulment proceeding but is based upon essentially the same facts.

In support of the trial court's order sustaining his demurrer, the defendant contends that according to the doctrine of res judicata any cause of action for damages that the plaintiff might have had was merged in the decree of annulment and no longer exists. This contention assumes that her suit for damages involves the same cause of action that was involved in her suit for annulment. But the fact that the same misrepresentations were involved in both suits is not conclusive. The harm remedied by the decree of annulment is not the same as the harm sought to be remedied by

the present action. The suit for annulment was brought in equity to determine the plaintiff's marital status. In contrast, the present suit seeks damages at law as compensation for an injury to a property right. The present action is based on a cause of action different from that asserted in the suit for annulment and therefore is not barred under any theory of res judicata.

A second ground asserted in support of the order sustaining the demurrer is that the present action is barred by section 43.5, subdivision (d) of the Civil Code, which provides that no cause of action arises for "breach of promise of marriage." However, the language of the code section indicates that it was only intended to abolish causes of action based on an alleged breach of contract. The plaintiff's complaint states a cause of action for fraud—the making of promises without any intention of performing them. (Civ. Code, § 1572, subd. 4; *Mack* v. *White*, 97 Cal.App.2d 497 [218 P.2d 76] ; *Schaub* v. *Schaub*, 71 Cal.App.2d 467 [162 P.2d 966].) Such a cause of action is not barred by section 43.5, subdivision (d). (See *Mack* v. *White, supra*; *Norman* v. *Burks*, 93 Cal.App.2d 687 [209 P.2d 815].)

The defendant's final contention is that the present action is foreclosed by the rule barring tort actions between spouses. American courts now generally agree that this rule does not apply to property tort actions—that is, to tort actions involving injury directly to a property interest rather than to the person. (See cases collected in Prosser, Torts (2d ed. 1955) § 101, pp. 672-673; McCurdy, *Torts Between Persons in Domestic Relations*, [1930] 43 Harv.L.Rev. 1030, 1037-1040; see also 3 Vernier, American Family Laws, § 180.) To the extent that the tort inherent in the commission of fraud has been characterized, it has been said to be a property tort. (See cases collected in Prosser, Torts (2d ed. 1955), § 101, p. 672, n. 24; McCurdy, *supra* at 1039, n. 30, 1040, n. 44. But see McCurdy, *supra* at 1044, n. 63.)

There is also authority in this state indicating that the marital immunity does not apply to property torts. (See *Peters* v. *Peters*, 156 Cal. 32, 34, 36 [103 P. 219, 23 L.R.A.N.S. 699] ; *Smith* v. *Stuthman*, 79 Cal.App.2d 708, 711 [181 P.2d 123] ; *People* v. *Graff*, 59 Cal.App. 706, 712 [211 P. 829].) The enactment of "statutes giving the wife the right to separate property and to make contracts with her husband concerning the same" indicates a legislative intent to abolish the immunity insofar as it applied to actions concerning

property rights. (*Peters* v. *Peters, supra,* 156 Cal. 32, 34, 36. See Civ. Code, § 158; Code Civ. Proc., § 370.) Whatever may have been the scope of the immunity at common law it should not apply to interspouse property tort actions such as the present one. This conclusion makes it unnecessary to consider whether the annulment of a voidable marriage would remove an immunity that was operative while the marriage existed. No immunity from the present action attached when the plaintiff and the defendant were married.

The second amended complaint states a cause of action and the demurrer was improperly sustained.

The judgment is reversed.

Gibson, C. J., Carter, J., and Traynor, J., concurred.

SPENCE, J.—I dissent.

In my opinion plaintiff's alleged cause of action is essen-tially one for damages for "breach of promise of marriage," within the meaning of section 43.5 of the Civil Code, which provides that "no cause of action arises" in such cases.

The majority opinion states: "However, the language of the code section indicates that it was only intended to abolish causes of action based on an alleged breach of contract. The plaintiff's complaint states a cause of action for fraud—the making of promises without any intention of performing them. . . . Such a cause of action is not barred by section 43.5, subdivision (d)." I cannot agree with this conclusion, as it permits a party to defeat the purpose of section 43.5 by the mere device of adding an allegation that at the time of making the promise, the party had no intention of performing it, thereby purporting to convert the action into a tort action. The cited section does not confine itself to abolishing actions ex contractu, but it abolishes all actions for "breach of promise of marriage" regardless of the form which the action may take. In this connection, it is significant that actions for "breach of promise of marriage" have been treated as being in the nature of tort actions (*Syfert* v. *Solomon*, 95 Cal.App. 228 [272 P. 810] ; *Lanigan* v. *Neely*, 4 Cal. App. 760 [89 P. 441]), and that section 43.5 abolishes actions for "breach of promise of marriage" and three other classes of tort actions.

In *Thibault* v. *Lalumiere* (1945), 318 Mass. 72 [60 N.E.2d 349, 158 A.L.R. 613], plaintiff attempted to recover for alleged fraud in the face of a similar statute, and included a

similar allegation of ''lost employment'' as an element of damage. The court there said at page 351 [60 N.E.2d]: ''Actions in tort for fraud have been held to be within the prohibition of such statutes and any other cause of action that originates in the breach of a promise of marriage. The plaintiff's cause of action arises out of a breach of promise of marriage, and she cannot circumvent the statute by bringing an action in tort for damages so long as the direct or underlying cause of her injury is the breach of promise of marriage. (Citing cases.)'' Numerous authorities are collected in a note in 158 American Law Reports 618, where it is said at page 624: ''Upon the general principle announced above, it has been held that where an action stems from, or arises out of, a breach of a marriage contract, the consequences of the statute abolishing actions for such a cause may not be avoided by bringing an action in tort for fraud or deceit.''

The cases cited in the majority opinion (*Schaub* v. *Schaub*, 71 Cal.App.2d 467 [162 P.2d 966] ; *Norman* v. *Burks*, 93 Cal. App.2d 687 [209 P.2d 815] ; *Mack* v. *White*, 97 Cal.App.2d 497 [218 P.2d 76]) do not support the conclusion reached by the majority. These cases merely allowed the restoration of property obtained through fraudulent representations. Such decisions may be justified on the basis of preventing unjust enrichment of the party perpetrating the fraud. In distinguishing the two situations, it was said in *Norman* v. *Burks, supra,* at page 691: ''Defendant's suggestion that this is a heartbalm action and barred by section 43.5 of the Civil Code is without merit.'' The present action, however, is essentially a ''heartbalm'' action seeking damages rather than the restoration of property.

While the majority opinion does not consider a further point in view of its conclusion that section 43.5 does not apply to an action in the nature of a fraud action, plaintiff urges that her action is not barred by said section because plaintiff and defendant went through a marriage ceremony. In other words, plaintiff claims that there can be no ''breach of promise of marriage,'' within the meaning of the section, in a case where a ceremony has been performed. This claim places an unduly narrow construction upon the word ''marriage'' and upon the phrase ''breach of promise of marriage,'' as the ordinary concept of marriage contemplates much more than the mere performance of a marriage ceremony. In fact, the marriage relation existed long before any ceremony

was required, and the relation of husband and wife may still be created in some states without the formality of a ceremony. While such ceremony is required in California (Civ. Code, § 71), the ceremony merely evidences the only form of civil contract out of which the "personal relation" of marriage may be legally established in this state. "Marriage" is defined by section 55 of the Civil Code as "a personal relation arising out of a civil contract" and is to be distinguished from the contract itself. This distinction was made in *Sharon* v. *Sharon*, 75 Cal. 1, at page 9 [16 P. 345], where the court said: "The section of the code defines 'marriage,' . . . as distinguished from a present contract to marry, or the act of becoming married." (See also Armstrong, California Family Law, vol. I, pp. 1-3.)

Plaintiff recognized the greater import of the term "marriage" in drawing her complaint. She alleged that defendant "by his said proposal of marriage impliedly represented to plaintiff that defendant . . . intended . . . to have with plaintiff normal and natural marital intercourse and consummate said marriage." It is the alleged breach of this implied promise, or otherwise stated, the alleged falsity of the implied representation of an intention to consummate the marriage, which is the gist of plaintiff's alleged cause of action by which she seeks to recover damages. I am therefore of the opinion that "breach of promise of marriage," as that term is used in section 43.5, includes the breach of promise to consummate the marriage following a ceremony as well as the breach of promise to go through a ceremony; and that it is immaterial, for the purposes of section 43.5, whether the intention to breach the promise antedated, accompanied or followed the making of the promise.

While the New York statute contains somewhat different wording and has been construed as abolishing all types of actions based upon a "contract to marry," including actions for restoration of property obtained through fraud in connection with such a contract (*Bressler* v. *Bressler*, 133 N.Y.S. 2d 38; *Hallstrom* v. *Erkas*, 124 N.Y.S.2d 169; *Nosonowitz* v. *Kahn*, 201 Misc. 863 [106 N.Y.S.2d 836]; *Grunberg* v. *Grunberg*, 99 N.Y.S.2d 771; *Andie* v. *Kaplan*, 263 App.Div. 884 [32 N.Y.S.2d 429]), the rule in that state, which I believe should be followed under the circumstances presented here, is that it makes no difference whether or not the parties actually went through a marriage ceremony. (*Grunberg* v. *Grunberg, supra*, 99 N.Y.S.2d 771, 773.) As above indicated,

I am therefore of the opinion that the failure to consummate the marriage following a ceremony is as much a "breach of promise of marriage," within the meaning of section 43.5, as is a failure to participate in a marriage ceremony. It follows that plaintiff's allegation that defendant "failed and refused to consummate said form of marriage" brings this action for damages within the class of actions which have been abolished by said section 43.5.

In view of my conclusion that plaintiff cannot prevail in this action because of the provisions of section 43.5 of the Civil Code, I deem it unnecessary to consider the other points discussed in the majority opinion. Mention should be made, however, of the majority's characterization of plaintiff's action as one for a "property tort." Plaintiff here sought "actual damages in the sum of $15,000.00" and "$10,000.00 for the sake of example and by way of punishing defendant," based upon her allegations that "plaintiff suffered intense humiliation, public disgrace, mental anguish, became ill, sick and disabled" as well as upon her allegations concerning loss of employment and expense incurred. Such allegations show that this is essentially a "heartbalm action" for damages for injuries to person rather than an action for injuries to property. It bears no analogy to any of the cases cited in the majority opinion in which the restoration of property was permitted in order to prevent the unjust enrichment of the defendant.

I would affirm the judgment.

Schauer, J., and McComb, J., concurred.

Respondent's petition for a rehearing was denied June 27, 1956. Schauer, J., Spence, J., and McComb, J., were of the opinion that the petition should be granted.