[Civ. No. 52894. First Dist., Div. Three. July 16, 1982.]

In re the Marriage of MARINA W. and HOWARD T. BUCKLEY.
HOWARD T. BUCKLEY, Appellant, v.
MARINA W. BUCKLEY, Respondent.

COUNSEL

Edward I. Mears, Dennis L. Woodman, Woodman & Woodman and Woodman, Woodman & Mears for Appellant.

Thoits, Lehman & Love, George B. Richardson and Vivian L. Kral for Respondent.

OPINION

SCOTT, J.—Plaintiff Howard Buckley (hereafter husband) brought this action against Marina Buckley (hereafter wife), alleging that she fraudulently induced him to enter into a void marriage. He appeals from a judgment entered against him after the grant of wife's motion for "summary adjudication of issues." We affirm.

## I

Husband, a cardiologist, and wife were married in 1969. In 1978 wife filed a petition for dissolution; in response, husband sought to have the marriage declared a nullity pursuant to Civil Code section 4401, on the ground that on the date of their wedding wife's prior marriage had not yet been finally dissolved. In October 1979 a stipulated judgment was entered, declaring the parties' marriage a nullity, dividing the couple's "community property," and awarding wife both spousal support and attorney's fees. In addition, the judgment provided for joint custody of the couple's two children.

In March 1980, husband filed this action against wife for fraud and concealment. He alleged that prior to their marriage, she falsely represented to him that she was single, although she knew that she was still married to another. He alleged that he did not learn of the falsity of her representation until April 1978. He sought to recover $87,856.13 in damages: $57,000 for the value of the property awarded to her in the stipulated judgment, $7,793.35 for her court-ordered spousal support and medical costs, $11,615.82 for her attorney's fees, and $11,446.96 for his own attorney's fees in the nullity proceedings. In addition, he sought punitive damages of $50,000.

Wife moved for "summary adjudication of issues," urging that the action was barred by: (1) Civil Code section 43.4; (2) the doctrine of finality of judgments; and (3) res judicata and collateral estoppel. In addition, she urged that husband had waived his right to bring the action, and that he was guilty of laches and "unclean hands."[1] The trial court's order granting her motion orders that ". . . all issues raised by the pleadings . . . be deemed established in favor of [respondent wife] and against [appellant husband]."

## II

Among other arguments, wife urged that husband's complaint was barred by Civil Code section 43.4, which provides: "A fraudulent promise to marry or to cohabit after marriage does not give rise to a cause of

---

[1]At least in part, defendant's motion for "summary adjudication" amounted to a challenge to plaintiff's ability to state a cause of action as a matter of law, and was in effect a motion for judgment on the pleadings. (See *Sparks* v. *City of Compton* (1976) 64 Cal.App.3d 592, 595, fn. 1 [134 Cal.Rptr. 684]; *C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483].)

action for damages." Husband contends that Civil Code section 43.4 has no application to this lawsuit. We disagree.

■ The fundamental rule of statutory construction is that the court must ascertain the intent of the Legislature so as to effectuate the purpose of the law. In ascertaining that intent, we must first examine the words of the statute in question. (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 132-133 [142 Cal.Rptr. 325].) If the meaning of the statute is plain and its language clear and unambiguous, we must follow that language, whatever we think of the wisdom, expediency, or policy underlying the legislative act. (*Wallace* v. *Department of Motor Vehicles* (1970) 12 Cal.App.3d 356, 360 [90 Cal.Rptr. 657].)

■ The statute flatly proclaims, "A fraudulent promise to marry ... does not give rise to a cause of action ...." (Civ. Code, § 43.4.) A fraudulent promise is a promise made without any intention of performing it. (See Civ. Code, § 1710, subd. 4.) ""A promise to do something necessarily implies *the intention to perform*, and, where such an intention is absent, it is an implied misrepresentation of fact, which is actionable fraud."' ([Citation]; original italics; 4 Witkin, Summary of Cal. Law (8th ed. 1973) § 453, p. 2717, and cases there cited.)" (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 133 [135 Cal.Rptr. 802].) Unquestionably, a promise to marry made by one who knows that a lawful marriage is impossible because a prior marriage remains undissolved is a fraudulent promise. On its face, then, the unqualified language of Civil Code section 43.4 would appear to include in its abolition of causes of action based on a fraudulent promise to marry those cases where a prior undissolved marriage prevents performance.

Our examination of the legislative history and judicial construction of Civil Code section 43.4 reinforces our conclusion that husband's action is barred by this statute. In 1939 the California Legislature abolished causes of action for "[b]reach of promise of marriage." (Civ. Code, § 43.5, subd. (d).)[2] Such actions, known as "heart balm" suits, had been widely criticized as fruitful sources of fraud and extortion because of

---

[2]Civil Code section 43.5 provides: "No cause of action arises for:
"(a) Alienation of affection.
"(b) Criminal conversation.
"(c) Seduction of a person over the age of legal consent.
"(d) Breach of promise of marriage."

the ease with which they were employed to embarrass and harass individuals wholly innocent of wrongdoing. (See *Ikuta v. Ikuta* (1950) 97 Cal.App.2d 787, 789 [218 P.2d 854]; see also Feinsinger, *Legislative Attack on "Heart Balm"* (1935) 33 Mich.L.Rev. 979.) Similar "anti-heart balm" legislation was enacted in several other states; generally those statutes were construed to bar actions for harm resulting from the failure to perform a marriage promise, sounding either in tort or in contract. (Annot. (1945) 158 A.L.R. 617, 624.)

In *Langley v. Schumacker* (1956) 46 Cal.2d 601 [297 P.2d 977], however, the California Supreme Court departed from that general rule. Plaintiff in *Langley* brought an action to recover damages for fraud, alleging that defendant induced her to leave her employment and marry him, but that after the ceremony he refused to cohabit with her. A divided court concluded that Civil Code section 43.5, subdivision (d), had only abolished causes of action based on alleged breach of contract. Because plaintiff's complaint stated a cause of action for fraud (the making of a promise without any intention of performing it rather than the breach of a promise), her action was not barred. (*Id.*, at p. 603.)

The dissent argued that plaintiff should not be allowed to circumvent the statute by bringing an action in tort for damages as long as the underlying cause of her injury was the breach of promise of marriage. (*Id.*, at p. 605.) Addressing a point urged by plaintiff but not discussed by the majority, the dissent also expressed the view that the fact that plaintiff and defendant had gone through a marriage ceremony did not enable her to avoid the statutory ban.

*Langley* engendered considerable criticism. (See Comment, *California Reopens the "Heartbalm" Action* (1957) 9 Stan.L.Rev. 406; Note, *Domestic Relations: Avoidance of Anti-Heartbalm Legislation by the Action of Fraud* (1957) 8 Hastings L.J. 210; Note, *Breach of Promise of Marriage: California Civil Code Section 43.5: Does Not Apply to Action in Tort for Fraud. Husband and Wife: Interfamily Tort Immunity: Action between Spouses for Fraud Allowed.* (1956) 4 UCLA L.Rev. 114; Note, *Husband and Wife—Annulment—Actions Between Spouses—Breach of Promise of Marriage* (1957) 30 So.Cal.L.Rev. 548.) Nevertheless, the case was also cited as authority for the proposition that California's anti-heart balm statute probably would not bar a cause of action for fraudulent inducement into a void or voidable marriage. (Annot. (1960) 72 A.L.R.2d 956, 983.)

In 1959 the Legislature responded to *Langley* by enacting Civil Code section 43.4 barring actions based on fraudulent promises. (*Boyd* v. *Boyd* (1964) 228 Cal.App.2d 374, 376 [39 Cal.Rptr. 400].) In *Boyd* plaintiff, a widow, married defendant, who left her after two days and refused to live with and support her. As a result of the marriage, certain widow's benefits which she had been receiving were terminated. Plaintiff then brought an action alleging both breach of promise and fraudulent promise to live with and support her. In her effort to avoid Civil Code sections 43.4 and 43.5, she argued, inter alia, that the marriage ceremony took the case out of the class of suits prohibited.

Rejecting that argument, the court looked at the Legislature's response to *Langley* and stated: "In that case the parties in fact had gone through a marriage ceremony. From the standpoint of the majority holding (that the statute did not bar a fraud action), the marriage ceremony was unimportant and received no comment. Three dissenting members, speaking through Justice Spence, took the position that fraud actions were within the statutory bar, which applied whether or not the parties had undergone the marriage ritual. With these opposing positions fully revealed, the 1959 Legislature adopted section 43.4, which was drafted to embrace a 'fraudulent promise to marry or to cohabit after marriage.' Thus the Legislature effectually codified the minority position in *Langley* v. *Schumacker*, not only barring actions sounding in fraud but *also demonstrating a purpose to embrace postnuptial breach*." (*Boyd* v. *Boyd, supra*, 228 Cal.App.2d at p. 378, italics added.) Elsewhere the *Boyd* court also stated: "In our view the occurrence of a marriage ceremony does not affect operation of the statute." (*Id.*, at p. 377.)

The literal language of the statute and the *Boyd* court's conclusion that a marriage ceremony does not enable one to avoid the statutory bar lead us to conclude that actions alleging fraudulent inducement into a void marriage are among actions prohibited by Civil Code section 43.4. We are not alone in that view. Discussing the Legislature's enactment of that section, commentator Witkin seems to assume that a wife induced to enter into a bigamous marriage cannot bring an action for fraud, but notes that she may receive protection on another theory in some circumstances. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 458, pp. 2722-2723.)

We recognize, however, that those few courts in other jurisdictions which have been confronted with this novel question have generally con-

cluded that statutes abolishing civil actions for breach of contract or promise to marry do not bar actions alleging fraudulent inducement into a void marriage. (See, e.g., *Morris* v. *MacNab* (1957) 25 N.J. 271 [135 A.2d 657, 77 A.L.R.2d 948]; *Tuck* v. *Tuck* (1964) 14 N.Y.2d 341 [251 N.Y.S.2d 653, 200 N.E.2d 554]; see Annot. (1960) 72 A.L.R.2d 956, 981.) Nevertheless, the plain language of this state's statute, coupled with its legislative history and judicial construction, has convinced us that the law of California is otherwise. As husband's action is essentially a "heart balm" action seeking to punish wife for her alleged fraudulent misrepresentations, it is barred by Civil Code section 43.4.

## III

We note that in those states recognizing a cause of action for fraudulent inducement into a void marriage, a plaintiff may be entitled to compensatory damages for mental pain and suffering, and punitive damages as well. (Annot. (1960) 72 A.L.R.2d 956, 994, § 9.) In this case, although husband sought punitive damages, he did not allege any mental suffering. ▮ ▮▮ ▮ Instead, he sought to recover an amount equal to that which wife received pursuant to their stipulated judgment: property,[3] spousal support, and attorney's fees. We are aware that the "anti-heart balm" statutes have been construed not to abolish causes of action to restore property acquired through a fraudulent marriage promise; such actions have been justified on the basis of preventing unjust enrichment. (See *Mack* v. *White* (1950) 97 Cal.App.2d 497 [218 P.2d 76]; *Norman* v. *Burks* (1949) 93 Cal.App.2d 687 [209 P.2d 815], discussed in *Boyd* v. *Boyd, supra,* 228 Cal.App.2d at p. 379, fn. 2.) ▮ Nevertheless, even if husband's action was not barred by Civil Code section 43.4, or if his complaint can be read as an attempt to state a cause of action for the restoration of money obtained by fraud, the trial court properly granted judgment for wife, as husband was also collaterally estopped by the stipulated judgment of nullity from relitigating the issue of wife's alleged fraud.

---

[3]When a determination is made that a marriage is void, the property acquired during that union which would have been community property or quasi-community property if the union had not been void is to be divided equally in accordance with Civil Code section 4800, apparently even if only one of the two believed in good faith that the marriage was valid. In other words, the Legislature has determined that the spouse who knows the marriage is invalid has the same right to half the property as does the "innocent" spouse. (Civ. Code, § 4452; cf. Civ. Code, §§ 4455, 4456; but see *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 680, fn. 18 [134 Cal.Rptr. 815, 557 P.2d 106].) It would effectively nullify section 4452 to permit husband to attempt to recover in a tort action that property to which wife was entitled *regardless* of her status as putative spouse.

According to that aspect of the doctrine of res judicata known as collateral estoppel, a party is collaterally estopped from relitigating an issue necessarily determined in a prior adjudication if (1) the issue decided in the previous litigation is identical with that presented in the action in question; (2) there was a final judgment on the merits in the first action; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior action. The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. (*Perez* v. *City of San Bruno* (1980) 27 Cal.3d 875, 883 [168 Cal.Rptr. 114, 616 P.2d 1287]; *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810-813 [122 P.2d 892].)

Husband was obviously a party to the stipulated judgment, which was a judgment on the merits for purposes of res judicata and collateral estoppel. (*De Weese* v. *Unick* (1980) 102 Cal.App.3d 100, 103 [162 Cal.Rptr. 259]; *Greatorex* v. *Board of Administration* (1979) 91 Cal.App.3d 54, 58 [154 Cal.Rptr. 37]; *Ellena* v. *State of California* (1977) 69 Cal.App.3d 245, 259 [138 Cal.Rptr. 110].) If that judgment necessarily determined that wife did not fraudulently misrepresent her status as a single woman to induce husband to enter into that marriage relationship, he cannot relitigate the issue in this new action.

A stipulated judgment normally concludes or determines all matters put into issue by the pleadings, unless the parties agree to restrict its scope by expressly withdrawing an issue from that judgment. (*Ellena* v. *State of California, supra*, 69 Cal.App.3d at p. 260.) Section 4456 of the Family Law Act (Civ. Code, § 4000 et seq.) authorizes the court to award attorney's fees in proceedings to have a marriage adjudged void "... in which the party applying for attorney's fees and costs *is found to be innocent of fraud or wrongdoing in inducing or entering into the marriage*, and free from knowledge of the then existence of any prior marriage or other impediment to the contracting of the marriage for which a judgment of nullity is sought." (Italics added.) Section 4455 of the act permits the court, upon a judgment that a marriage is a nullity, to order a party to pay for the support of the other in the same manner as if the marriage had not been void, "provided that the party for whose benefit the order is made is found to be a putative spouse." When a determination is made that a marriage is void, a putative spouse is *one whom the court finds to have "believed in good faith* that the marriage was valid, ...." (Civ. Code, § 4452, italics added.)

From those statutory provisions, it is apparent that when husband responded to wife's petition for dissolution, which included a request for spousal support and attorney's fees, with a petition to have the marriage declared a nullity, her good faith belief that their marriage was valid was put into issue. While there was no explicit finding in the stipulated judgment that she was innocent of fraud or wrongdoing in inducing or entering the marriage, the award of both attorney's fees and spousal support amounts to an implied finding in her favor on that issue. There is no express language in the stipulated judgment withdrawing the issue from the scope of the judgment, and husband offered no extrinsic evidence in opposition to the motion for summary adjudication to establish any such reservation. (Cf. *Larsen* v. *Beekmann* (1969) 276 Cal.App.2d 185, 191 [80 Cal.Rptr. 654].)

Husband argues that collateral estoppel does not apply, because rule 1212 of the California Rules of Court[4] precluded him from asserting his cause of action for fraud against wife in the proceedings pursuant to the Family Law Act. However, the fact that husband could not have responded to wife's dissolution action with a tort cross-complaint is irrelevant. The doctrine of collateral estoppel is a doctrine of "issue preclusion." (*Perez* v. *City of San Bruno, supra*, 27 Cal.3d at p. 883.) The issue of wife's alleged fraud was necessarily determined by the consent judgment, and husband cannot now vex and harass wife by litigating that issue again in a new cause of action. (See *Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 972 [104 Cal.Rptr. 42, 500 P.2d 1386].)

Judgment is affirmed.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied August 13, 1982.

---

[4]Rule 1212 of the California Rules of Court provides: "Neither party to the proceeding may assert against the other party or any other person any cause of action or claim for relief other than for the relief provided in these rules or the Family Law Act."