[No. H028589. Sixth Dist. Apr. 24, 2006.]

In re the Marriage of GERALD W. and EILEEN CAULEY.
GERALD W. CAULEY, Respondent, v.
EILEEN J. CAULEY, Appellant.

**COUNSEL**

Robin Yeamans for Appellant.

Tammara S. Bloom for Respondent.

**OPINION**

**MIHARA, J.**—Under Family Code section 4325, there is a rebuttable presumption that an award of spousal support not be made to a spouse who has been convicted of intraspousal domestic violence.[1] Appellant Eileen J. Cauley has been convicted of domestic violence against respondent Gerald W. Cauley. The parties' settlement agreement provided that spousal support was not subject to modification or termination. The trial court found that the presumption of section 4325 applied here and had not been rebutted. It then

---

[1] All further statutory references are to the Family Code unless stated otherwise.

granted respondent's motion to terminate spousal support to appellant. We find no merit to appellant's contentions and affirm.

## I. Statement of Facts

On November 25, 2002, respondent filed a petition for dissolution of marriage. The parties had been married for 18 years. In March 2003, respondent requested a temporary restraining order. His declaration stated that appellant had threatened his life in numerous telephone messages and calls and had physically attacked him several times during the prior year. The court issued the temporary restraining order, which was due to expire in July 2003.

On June 25, 2003, the parties signed a stipulation for judgment. It provided in relevant part: "Husband shall pay Wife for her support and maintenance $5,250.00 per month, payable via direct deposit on the 10th day of each calendar month commencing immediately after the effective date of this Agreement. These spousal support payments shall continue until Wife's remarriage or the death of either Husband or Wife, whichever occurs first, or until further order of the court. These payments shall be non-modifiable with the following exceptions which may form the basis for a modification of the above amount: 1) Wife's cohabitation with a partner; 2) Husband's loss of income either due to disability, or job loss." The trial court retained jurisdiction as to spousal support until March 31, 2010. Respondent also agreed to take his request for a restraining order off calendar with prejudice.[2]

On August 6, 2003, appellant flew to Florida where respondent was living with his girlfriend and her son. During the next couple of days, appellant removed items from the exterior of respondent's house, sprayed herbicide in the garden, ripped out plants, killed his fish, stole personal property, and threw numerous items in the bay behind the house. At some point during appellant's crime spree, respondent opened his door, and she sprayed herbicide in his face. When his girlfriend arrived, appellant sprayed her as well. Appellant was eventually arrested for domestic battery.

On August 12, 2003, respondent obtained a temporary restraining order in Florida. On September 10, 2003, appellant did not appear at the hearing, and the trial court made the restraining order effective for one year. It ordered appellant to have no contact with respondent.

On August 15, 2003, appellant sent respondent's attorney a letter in which she threatened to accuse respondent of rape if he did not have the domestic battery charges dropped. A few days later, appellant contacted the police department and reported that respondent had raped her.

---

[2] On August 25, 2003, the judgment of dissolution was filed.

Appellant also repeatedly violated the restraining order. She sent written and electronic correspondence to respondent. She made telephone calls, and left messages on his voice mail. Appellant threatened respondent, his wife, members of their families, and his employer. Between September 2003 and March 2004, appellant made more than 1,000 calls, and left nearly 500 messages, which totaled almost 70 hours of recordings. Though respondent changed his home telephone to an unlisted number, appellant was able to obtain his new cell phone number within a few weeks, and the calls continued. In February 2004, appellant threatened the president of the company that employed respondent. On March 22, 2004, appellant left over 52 messages on respondent's voice mail.

Since appellant had left Florida, the prosecutor was seeking her extradition from California for violations of the restraining order. In the meantime, on March 30, 2004, respondent requested a restraining order in California so that California authorities could prosecute her if she continued to harass him. On the same date, respondent filed a motion for modification and termination of spousal support based on appellant's acts of domestic violence.

In the spring of 2004, Florida issued a warrant for appellant's arrest on the charge of felony aggravated stalking and a $1,000,000 bond was set. On April 16, 2004, appellant was arrested in San Jose and eventually extradited to Florida. On May 17, 2004, she pleaded guilty to felony aggravated stalking and was placed on five years' probation. Appellant's conditions of probation required her to attend anger management training, receive alcoholic/psychiatric treatment, and not contact the victims.

Meanwhile, on April 26, 2004, the court in California ordered a temporary cessation in spousal support under section 4325, and set the case for a review hearing on October 18, 2004.[3] The court also granted respondent's request for a restraining order. Appellant was ordered to have no contact with respondent, his wife, and her son for three years.

On May 17, 2004, appellant was released from custody in Florida. Less than two weeks later, appellant again began making telephone calls in which she threatened to harm respondent and his coworkers. She made over 91 calls between May 28 and October 11, 2004. Though the trial court had set spousal support temporarily at $0, appellant repeatedly threatened respondent if he did not pay her. Based on this conduct, Florida again charged appellant with felony aggravated stalking as well as violation of the conditions of her probation.

On October 13, 2004, the review hearing on the spousal support order was held. Appellant did not attend. The trial court then set a hearing for appellant

---

[3] Though appellant was in custody, she attended this hearing.

to present evidence to rebut the presumption that she was not entitled to spousal support. Counsel agreed to provide declarations and to use the hearing for cross-examination and argument. Later that same afternoon, appellant was arrested on the Florida charges.

Prior to the hearing on December 15, 2004, respondent submitted two declarations. Though appellant did not submit a declaration, her counsel made an offer of proof on her behalf at the hearing. He stated that there was a nonmodifiable settlement agreement that provided for spousal support, that appellant was a convicted felon who was an alcoholic with no job and no training, and that appellant made the telephone calls to find out when she would receive her support payments. Respondent's counsel argued that respondent and his family had lived through "two years of sheer hell," that appellant had been in numerous alcohol treatment programs, and that appellant had violated court orders in both Florida and California.

## II. Discussion

### A. Termination of Spousal Support

Section 4325, subdivision (a) states: "In any proceeding for dissolution of marriage where there is a criminal conviction for an act of domestic violence perpetrated by one spouse against the other spouse entered by the court within five years prior to the filing of the dissolution proceeding, or at any time thereafter, there shall be a rebuttable presumption affecting the burden of proof that any award of temporary or permanent spousal support to the abusive spouse otherwise awardable pursuant to the standards of this part should not be made."

Relying on section 3591, appellant contends that the trial court erred in applying section 4325 in the present case. Section 3591, subdivision (c) states in relevant part that "[a]n agreement for spousal support may not be modified or revoked to the extent that a written agreement . . . specifically provides that the spousal support is not subject to modification or termination." Here the parties agreed that spousal support would not be modified or terminated unless appellant cohabited with a partner or appellant suffered a loss of income. Respondent counters that enforcement of the settlement agreement would violate the public policy against domestic violence.

"In determining whether a contract violates public policy, courts essentially engage in a weighing process, balancing the interests of enforcing the contract with those interests against enforcement. . . . But the cases make clear that the judicial power to declare public policy in the context of contract interpretation and enforcement should be exercised with great caution. ' " ' "The

power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." ' " ' " (*Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1082 [135 Cal.Rptr.2d 361, 70 P.3d 351], citations omitted.)

■ In resolving the issue before us, we turn to the Restatement on Contracts, which provides that "[a] promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." (Rest.2d Contracts, § 178(1).) Courts will examine the interest in enforcement of a contract term, taking into account "the parties' justified expectations, [¶] . . . any forfeiture that would result if enforcement were denied, and [¶] . . . any special public interest in the enforcement of the particular term." (Rest.2d Contracts, § 178(2).) Courts will then weigh the public policy against enforcement, considering "the strength of that policy as manifested by legislation or judicial decisions, [¶] . . . the likelihood that a refusal to enforce the term will further that policy, [¶] . . . the seriousness of any misconduct involved and the extent to which it was deliberate, and [¶] . . . the directness of the connection between that misconduct and the term." (Rest.2d Contracts, § 178(3).)

■ In this case, we conclude that the public policy against enforcement of the nonmodifiable spousal support provision clearly outweighs any interest in its enforcement. Though there is a strong public policy in favor of enforcing the spousal support provisions of the parties' settlement agreement and appellant would forfeit a substantial amount of spousal support if there were no enforcement, the parties could not have reasonably expected that respondent would finance his own abuse by appellant. Balanced against these factors, we note that there is a significant public policy against domestic violence. As was noted in the analysis from the Assembly Judiciary Committee, "granting spousal support to a convicted abuser is uncon-scionable and constitutes unjust enrichment. . . . [S]pousal support orders in such domestic violence cases potentially force victims of abuse to remain dangerously entangled in the abuser's web of violence and intimidation." (Assem. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 1221 (2001–2002 Reg. Sess.) as amended Aug. 23, 2001, p. 3.) Refusal to enforce the spousal support provision will further this policy against domestic violence, because appellant will have fewer financial resources to continue her harassment of respondent. We must also emphasize that appellant's misconduct is extremely serious and has continued despite incarcera-tion and court orders in California and Florida. Moreover, there is a direct connection between appellant's misconduct and the nonmodifiable spousal support provision. As previously stated, appellant has relied on

respondent's obligations to provide her with the financial ability to harm him. While we acknowledge the fundamental principle that former spouses are free to specify the terms of their settlement agreement, we decline to enforce the spousal support provision in the present case.[4] Accordingly, the trial court did not err in concluding that appellant failed to rebut the presumption of section 4325.

■ Appellant also claims that respondent has other remedies. She points out that she has 83 counts of contempt pending against her in California and is facing additional charges in Florida, and thus she could potentially be incarcerated. This factor has no relevance. The fact that appellant has continued to threaten and harass respondent despite court orders does not render section 4325 inapplicable. Moreover, appellant's references to termination of spousal support as punishment misconstrue the effects of section 4325. Section 4325 embodies a legislative determination that victims of domestic violence not be required to finance their own abuse.[5]

Appellant next asserts that section 4325 does not apply to a modification of spousal support.

Section 4325 applies "[i]n any proceeding for dissolution of marriage" where one spouse is convicted of domestic violence against the other spouse "within five years prior to the filing of the dissolution proceeding, or at any time thereafter." Thus, the statute expressly states that the presumption is triggered by a supported party's criminal conviction at any time after the filing of the dissolution.

Even if the statutory language were not clear, the legislative history of section 4325 supports this interpretation. Senate Bill 1221, which provided the basis for section 4325, initially proposed a six-month time frame. It was then

---

[4] Our conclusion that section 4325 applies even when the parties have a nonmodifiable agreement is supported by other statutes. Section 4323 provides that there is a rebuttable presumption that the supported party needs less spousal support when cohabiting with another, while section 4337 states that the supporting party's obligation to pay spousal support terminates upon the death of either party or the remarriage of the supported party. Both statutes, however, create an exception when the parties agree otherwise in writing. In contrast to these statutes, section 4324 provides that a spouse who is convicted of attempting to murder the other spouse will not be entitled to spousal support. As with section 4325, section 4324 makes no reference to a contrary agreement by the parties. Had the Legislature intended to create such an exception in sections 4324 and 4325, it could have easily so provided. This omission reflects an intent by the Legislature that section 4325 applies regardless of any agreement between the former spouses.

[5] Appellant argues that when respondent entered into a nonmodifiable support agreement, he gambled that she would not engage in domestic violence and lost. However, we remain unpersuaded that victims must be required to financially support those who have been convicted of harming them.

amended to two years before or after the filing of the dissolution (Sen. Bill No. 1221 (2001–2002 Reg. Sess.) as amended in Sen. Apr. 19, 2001). In response, the Assembly Committee on Judiciary prepared an analysis of the bill, which questioned the time limitation. "[I]t is unclear why . . . there should be any arbitrary deadline limiting the applicability of the rebuttable presumption after the dissolution proceedings are commenced (currently 2 years in the bill). For example, if six years after a higher-earning spouse is ordered by the court to pay spousal support to her lower-earning former husband, the former husband is criminally convicted of perpetrating domestic violence against the supporting spouse, should not the rebuttable presumption apply, such that the court, upon notice of the entry of judgment of the conviction, would be required to terminate the support order absent the presumption being rebutted?" (Assem. Com. on Judiciary, analysis of Sen. Bill No. 1221 (2001–2002 Reg. Sess.) July 3, 2001, p. 8; underscoring omitted.) The bill was eventually amended to its present form. (Sen. Bill No. 1221 (2001–2002 Reg. Sess.) as amended in Assem. July 11, 2001). Thus, section 4325 applies to a modification of a spousal support order.

## B. Section 4320

■ Appellant next contends that the trial court abused its discretion in terminating spousal support without considering the factors of section 4320.[6] We disagree. When a supported spouse fails to rebut the presumption of section 4325, "support to the abusive spouse otherwise awardable pursuant

---

[6] Section 4320 provides in relevant part: "In ordering spousal support under this part, the court shall consider all of the following circumstances: [¶] (a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following: [¶] (1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment. [¶] (2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties. [¶] (b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party. [¶] (c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living. [¶] (d) The needs of each party based on the standard of living established during the marriage. [¶] (e) The obligations and assets, including the separate property, of each party. [¶] (f) The duration of the marriage. [¶] (g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party. [¶] (h) The age and health of the parties. [¶] (i) Documented evidence of any history of domestic violence, as defined in Section 6211, between the parties, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party. [¶] (j) The immediate and specific tax consequences to each party. [¶] (k) The balance of the hardships to each party."

to the standards of this part should not be made." Both sections 4320 and 4325 are included in part 3, chapter 2 of the Family Code. Thus, the Legislature has specified that the trial court is not required to consider the factors outlined in section 4320 in making its determination under section 4325.

### C.  Statement of Decision

Appellant also argues that the trial court committed reversible error by failing to issue a statement of decision.

■ Section 3654 provides: "At the request of either party, an order modifying, terminating, or setting aside a support order shall include a statement of decision." When the trial court fails to render a statement of decision, it is reversible error. (*In re Marriage of Sellers* (2003) 110 Cal.App.4th 1007, 1010 [2 Cal.Rptr.3d 293].) However, where a party remains silent at the hearing and fails to bring the issue to the trial court's attention, he or she waives the right to a statement. (*Id.* at p. 1011.)

On October 13, 2004, appellant requested a statement of decision. The trial court initially ordered respondent's counsel to prepare a proposed statement of decision. However, when respondent's counsel requested clarification of the court's orders, the trial court and counsel discussed the need to schedule a rebuttal hearing for appellant to provide evidence to sustain her burden under section 4325. The trial court set the matter for hearing on November 29, 2004. It was then continued to December 15, 2004. At the conclusion of the hearing, the trial court stated its findings and order on the record. Appellant failed to mention her request for a written statement of decision. Accordingly, she has waived the issue on appeal. (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 647 [253 Cal.Rptr. 770].)

### D.  Evidence of Domestic Violence

Relying on section 4325, subdivision (b), appellant contends that respondent failed to present a certified copy of her conviction. There is no merit to this contention. Subdivision (b) refers to "documented evidence of a *convicted spouse's* history as a victim" (italics added) as a factor that the trial court may consider in determining whether the convicted spouse has met the rebuttable presumption.[7] There is no mention in section 4325 as to the type of evidence that is necessary to raise the rebuttable presumption that support should not be awarded.

---

[7] Section 4325, subdivision (b) states: "The court may consider documented evidence of a convicted spouse's history as a victim of domestic violence, as defined in Section 6211, perpetrated by the other spouse, or any other factors the court deems just and equitable, as conditions for rebutting this presumption."

## III. Disposition

The order is affirmed. Costs are awarded to respondent.

Rushing, P. J., and McAdams, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 12, 2006, S143928.