Filed 9/10/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of ANAND and MARY B. KELKAR. | B247085 |
| ANAND KELKAR, | (Los Angeles County Super. Ct. No. BD373325) |
| Respondent, | |
| v. | |
| MARY B. KELKAR, | |
| Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  James D. Endman, Commissioner.  Affirmed.

Christopher Campbell for Appellant.

Mark H. Rademacher for Respondent.

————————————

Family Code section 4325 establishes a rebuttable presumption against an award of spousal support to a spouse who has been convicted of an act of domestic violence against the other spouse.[1]  Here we must determine whether the family court erred in terminating spousal support to a wife where the wife pleaded no contest to and was convicted of an act of domestic violence before enactment of section 4325, but where the husband thereafter entered into a stipulated judgment providing for spousal support to the wife in ignorance of section 4325.  Mary Kelkar (Mary) contends her ex-husband, Anand Kelkar (Anand), cannot assert the presumption of section 4325, arguing section 4325 should not be applied retroactively, the doctrine of res judicata prevents modification of the support provisions of the stipulated judgment, and Anand is barred from attacking the stipulated judgment by the doctrines of waiver and equitable estoppel.[2]  We conclude section 4325 must be given retroactive application, the stipulated judgment was modifiable, and the doctrines of res judicata, waiver, and equitable estoppel did not bar application of the presumption of section 4325.  We affirm the family court's order terminating Mary's spousal support.

## BACKGROUND

Anand alleges that, during their long marriage, his wife Mary physically and verbally abused him on approximately 200 occasions.  Allegedly these included dozens of occasions on which Mary brandished a knife, and other times when she punched him, injured him, and attempted to push him down the stairs.  In 2000, Mary awakened Anand by yelling, brandishing two 9-inch kitchen knives at him, and stabbing the water bed upon which he was lying, within inches of his body.  As a result of the ensuing struggle for the knives, Anand was cut.  As a consequence of the water bed incident, in 2000, Mary pleaded no contest to unlawfully using a deadly weapon in a quarrel in violation of Penal Code section 417, subdivision (a)(1) (exhibiting a deadly weapon in a rude, angry,

[1] Undesignated statutory references are to the Family Code.

[2] Because both parties have the same last name, we refer to them by their first names.  No disrespect is intended.

or threatening manner). The record does not contain any denial by Mary that the water bed incident or the plea occurred.

Section 4325 became effective January 1, 2002. (§ 4325, added by Stats. 2001, ch. 293, § 3.) Anand filed a petition for dissolution of marriage in July 2002.

Anand and Mary entered into a stipulated judgment filed in 2004. Among other things, the stipulated judgment stated: "The purpose of this Judgment is to make a final and complete settlement of rights and obligations arising out of the Parties' marriage, including their respective property rights and support rights." The stipulated judgment required Anand to pay a certain amount of spousal support monthly, to cease on the death of Anand or Mary or on the remarriage of Mary, contained an annual cost-of-living increase provision, and also stated, "[Mary] is permanently disabled." The stipulated judgment advised: "The provisions of this Judgment are intended to comply with the requirements of *In re Marriage of Vomacka* (1984) 36 Cal.3d 459, and *In re Marriage of Brown* (1995) 35 Cal.App.4th 785, to make clear that no court shall have authority to provide for support of any amount at any time, except as specifically provided in this Judgment." The stipulated judgment did not state specifically in the paragraph addressing spousal support or elsewhere that spousal support could not be modified or terminated.

Although Anand complied with the terms of the stipulated judgment, Mary thereafter sent hundreds of profane and vulgar text messages to him and threatened and harassed his fiancée with disrespectful and crude phone calls and messages. His fiancée obtained a restraining order against Mary in 2007, which Mary subsequently violated. Anand obtained a restraining order against Mary in 2009, which Mary also violated.

On June 1, 2011, Mary filed an order to show cause, seeking an increase in spousal support. On September 19, 2011, Anand filed a responsive declaration, requesting termination or reduction of spousal support on the basis of section 4325, of which he had been unaware at the time he entered into the stipulated judgment.

Mary underwent medical and psychological examinations to determine whether she was disabled. The examinations resulted in findings Mary was not disabled, could

3

return to full-time employment after receiving certain treatment for her bipolar disorder, and would benefit from returning to work.

Mary's former attorney in the criminal matter filed a declaration saying Anand had submitted written declarations to the police and to the trial court to the effect that Mary had not tried to hurt him during the water bed incident and that Anand had insisted he was never in danger during the incident. He explained the attorney files and court records had become unavailable in the intervening decade. Anand responded by filing a declaration denying he had signed a declaration in the criminal action, denying having stated Mary did not intend to harm him, indicating he believed Mary had intended to harm him, and asserting that, if he had not moved quickly to get away when Mary stabbed the water bed, he would have suffered severe injury.

The hearing on the order to show cause proceeded on August 29, 2012. The family court determined Anand was unaware of section 4325 and had not waived his right to assert section 4325 as to future spousal support payments to Mary. The court rejected Mary's argument that Anand was barred by laches from asserting section 4325, concluding Mary had not been prejudiced by Anand's delay in the assertion of the statute because "she came out 400-some-odd thousand dollars to the good, because if he had raised it originally, she would have gotten zero for the last seven years." Further, the court found Anand had not executed a declaration attesting that Mary had not attempted to harm him. It also found Anand was indeed afraid during the water bed incident. In addition, the court held Mary had not been prejudiced by the unavailability of documents from the criminal action purportedly showing she did not act in a threatening manner, essentially finding her plea to an offense requiring her to act in a threatening manner could not be contradicted in a later proceeding by extrinsic evidence the act was not done in a threatening manner. The court held Mary's conviction of a violation of Penal Code section 417, subdivision (a)(1) raised the presumption of Family Code section 4325, which Mary had not rebutted. The court concluded Family Code section 4325 was retroactive. The court ordered spousal support to be terminated as of September 1, 2012.

This appeal followed.

4

**DISCUSSION**

**A.** *Section 4325 applies retroactively here*

We review the retroactive application of a statute de novo. (*In re Marriage of Fellows* (2006) 39 Cal.4th 179, 183 (*Fellows*).)

The general rule is that newly enacted Family Code sections apply retroactively. (§ 4, subd. (c); *Fellows*, *supra*, 39 Cal.4th at pp. 182–186.) Mary concedes section 4325 is required to be applied retroactively if it is not covered by an exception to the general rule. Mary's contention, however, is that section 4, subdivisions (f) and (h) bar retroactive application of section 4325. We disagree.

**1.** *Section 4, subdivision (h) does not bar retroactive application of section 4325*

Section 4325 provides: "(a) In any proceeding for dissolution of marriage where there is a criminal conviction for an act of domestic violence perpetrated by one spouse against the other spouse entered by the court within five years prior to the filing of the dissolution proceeding, or at any time thereafter, there shall be a rebuttable presumption affecting the burden of proof that any award of temporary or permanent spousal support to the abusive spouse otherwise awardable pursuant to the standards of this part should not be made. [¶] (b) The court may consider documented evidence of a convicted spouse's history as a victim of domestic violence, as defined in Section 6211, perpetrated by the other spouse, or any other factors the court deems just and equitable, as conditions for rebutting this presumption." "Domestic violence" is defined as, among other things, abuse perpetrated against a spouse. (§ 6211, subd. (a).)

Subdivision (h) of section 4 provides: "If a party shows, and the court determines, that application of a particular provision of the new law or of the old law in the manner required by this section or by the new law would substantially interfere with the effective conduct of the proceedings or the rights of the parties or other interested persons in connection with an event that occurred or circumstance that existed before the operative date, the court may, notwithstanding this section or the new law, apply either the new law or the old law to the extent reasonably necessary to mitigate the substantial interference."

5

Our Supreme Court has characterized subdivision (h) of section 4 as codifying the rule of due process of law that "[e]ven in the face of specific legislative intent, retrospective application is impermissible if it 'impairs a vested . . . right without due process of law.' [Citation]." (*Fellows*, *supra*, 39 Cal.4th at p. 189.)

That rule, of course, is qualified by the rule that "'[v]ested rights . . . may be impaired "with due process of law" under many circumstances. The state's inherent sovereign power includes the so called "police power" right to interfere with vested property rights whenever reasonably necessary to the protection of the health, safety, morals, and general well being of the people. The annals of constitutional law are replete with decisions approving, as constitutionally proper, the impairing of, and even the complete confiscation of, property rights when compelling public interest justified it. [¶] . . . [¶] 'The constitutional question, on principle, therefore, would seem to be, not whether a vested right is impaired by a marital property law change, but whether such a change reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment.' [Citation.]" (*Addison v. Addison* (1965) 62 Cal.2d 558, 566 (*Addison*).)

In *Fellows*, our Supreme Court reviewed the two groups of factors that must be analyzed to determine whether retroactive application of a new Family Code law violates due process of law: "(1) '"[T]he significance of the state interest served by the law [and] the importance of the retroactive application of the law to the effectuation of that interest"'; and (2) '"[T]he extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions."' [Citations.]" (*Fellows*, *supra*, 39 Cal.4th at p. 189.) Because a due process exception to the retroactive application of family law statutes is codified in subdivision (h), these are the two factors that must be evaluated in determining whether subdivision (h) applies to preclude retroactivity here.

**a.** *The significance of the state interest served by the new law and the importance of the retroactive application of the law to its effectuation*

In *Fellows*, a new section of the Family Code precluded a parent from relying on the defense of laches to escape liability for past-due child support payments. The court concluded that, although the financial consequences of abrogating a parent's preexisting right to assert the defense of laches were substantial, the law should be applied retroactively because the state's interest in applying it was great, the new law cured the "'rank injustice of the former law,'" and there was "'nothing unfair about requiring a parent to fulfill his moral and legal responsibilities.' [Citation.]" (*Fellows*, *supra*, 39 Cal.4th at p. 190.)

The court in *Fellows* relied on *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 (*Bouquet*), distinguished in *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208–1212. In turn, *Bouquet* relied upon *Addison*, *supra*, 62 Cal.2d 558, both of which are instructive here. In *Addison*, the court addressed a change in the family law which converted certain property previously treated as the husband's sole property to community property. (*Addison*, at p. 564.) The court applied the new law retroactively, in part because providing a spouse access to such funds was an important state interest. (*Id*. at p. 567.) The court in *Bouquet* commented on the *Addison* holding as follows: "The application of the . . . legislation to property acquired before its effective date clearly impaired the husband's vested property rights; prior to the enactment of the legislation he had been the sole owner of certain property and afterwards the property belonged to the community. Nevertheless, we deemed the retroactive application of the legislation a proper exercise of the police power. The state's paramount interest in the equitable distribution of marital property upon dissolution of the marriage, we concluded, justified the impairment of the husband's vested property rights. [Citation.]" (*Bouquet*, *supra*, 16 Cal.3d at p. 593, fn. omitted.)

The court in *Bouquet* went on to apply the same principles to the facts before it, where a different change in the Family Code caused property rights once vested in one spouse alone to become community property. The court there stated: "The infringement

7

of the wife's vested property rights in this case finds support in the same state interest that justified the retroactive application of the legislation in *Addison*; here, as in *Addison*, the Legislature reallocated property rights in the course of its abiding supervision of marital property and dissolutions.  Moreover, the legislation sprang in both cases from an appreciation of the rank injustice of the former law. . . .  The divestiture of the wife's property rights in the instant case is no more a taking of property without due process of law than was the divestiture of the husband's property rights in *Addison*.  The state's interest in the equitable dissolution of the marital relationship supports this use of the police power to abrogate rights in marital property that derived from the patently unfair former law." (*Bouquet*, *supra*, 16 Cal.3d at p. 594, fn. omitted.)  "We observed in *Addison* that 'where the innocent party would otherwise be left unprotected the state has a very substantial interest and one sufficient to provide for a fair and equitable distribution of the marital property without running afoul of the due process clause of the Fourteenth Amendment.' (*Addison*, *supra*, 62 Cal.2d at p. 567.)  The patent unfairness of former section 5118 surely makes this an appropriate case for the use of the police power to redress retroactively inequitable property rules." (*Bouquet*, *supra*, 16 Cal.3d at p. 594, fn. 11.)

The state's interest in implementing section 4325 was discussed in *In re Marriage of Cauley* (2006) 138 Cal.App.4th 1100 (*Cauley*).  The court emphasized the importance of the public policy against domestic violence as follows:  "[W]e note that there is a significant public policy against domestic violence.  As we noted in the analysis from the Assembly Judiciary Committee, 'granting spousal support to a convicted abuser is unconscionable and constitutes unjust enrichment. . . .  [S]pousal support orders in such domestic violence cases potentially force victims of abuse to remain dangerously entangled in the abuser's web of violence and intimidation.' (Assem. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 1221 (2001–2002 Reg. Sess.) as amended Aug. 23, 2001, p. 3.)  Refusal to enforce the spousal support provision will further this policy against domestic violence, because appellant will have fewer financial resources to continue her harassment of respondent." (*Cauley*, *supra*, 138 Cal.App.4th at p. 1106.)

8

The court also noted an apparent policy reason for the new statute:  Enforcement of a support agreement requiring payment of spousal support to a perpetrator of domestic violence unfairly requires the abused spouse to "finance his own abuse."  (*Ibid*.; accord, *In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059, 1062, fn. 1, 1068 (*Freitas*); *id.* at p. 1071 [citing and quoting *Cauley* as to strong public policy behind "'legislative determination that victims of domestic violence not be required to finance their own abuse'" and remarking "[t]he fact that the Legislature has singled out domestic violence as a critical factor that a court *must* consider in determining whether to award temporary spousal support" demonstrates importance of policy implemented by section 4325]; *Freitas*, at p. 1073.)

Mary's due process argument that application of section 4325 will deprive her of vested rights she obtained via the stipulated judgment requires us to weigh the importance of any policy favoring the finality of the stipulated judgment against the importance of the policy that "'granting spousal support to a convicted abuser is unconscionable and constitutes unjust enrichment'" and potentially forces "'victims of abuse to remain dangerously entangled in the abuser's web of violence and intimidation.'"  (*Cauley*, *supra*, 138 Cal.App.4th at p. 1106.)  We have no difficulty in concluding that enforcing this stipulated judgment, which provides for an "'unconscionable'" result that "'unjustly enriches'" the abuser at the expense of the victim and entangles the victim in the abuser's "'web of violence'" (*ibid*.), is not as important as enforcement of the state policy that seeks to prevent that precise result.  As the court observed in *Bouquet*, the state has a "paramount interest in the equitable distribution of marital property upon dissolution of the marriage," so that even "vested property rights" must yield to it.  (*Bouquet*, *supra*, 16 Cal.3d at p. 593.)  As in *Fellows, Bouquet*, and *Addison*, the state's interest in applying section 4325 is great and the new law seeks to cure the "'rank injustice of the former law.'"  (*Bouquet*, at p. 594.)  There is "nothing unfair about" relieving a victim of domestic violence of an obligation that he provide financial support to his abuser.  (*Fellows*, *supra*, 39 Cal.4th at p. 190.)  Indeed,

9

the state has "a very substantial interest" in protecting such innocent persons. (*Addison*, *supra*, 62 Cal.2d at p. 567.)

Mary also argues that public policy supports enforcement of the stipulated judgment because the "parties agree that Mary is permanently disabled" and the state has an interest "in not having to support someone who is totally disabled such as Mary." Mary's premise is false, as the record establishes that two experts rendered opinions to the effect that Mary is not disabled and that an early return to work will benefit her.

Mary's argument that section 4325 "substantially changed the legal consequences of Mary's 2000 *nolo* plea" also lacks merit. The cases speak of due process as the loss of a "'vested . . . right.'" (*Fellows*, *supra*, 39 Cal.4th at p. 189; *Addison*, *supra*, 62 Cal.2d at p. 566.) Mary has cited no authority for the proposition that she had a vested right to plead no contest to an act of domestic violence with impunity. In fact, at the time of her plea, applicable law directed the family court to consider "[d]ocumented evidence of a history of domestic violence" before ordering spousal support. (§ 4320, former subd. (h), as amended by Stats. 1999, ch. 846, § 1.5 (former § 4320, subd. (h)).) Nor did she have any vested right to receive spousal support if the marriage were someday dissolved. The vested rights upset in *Fellows*, *Addison*, and *Bouquet* were actual vested rights, rather than the speculative expectations on which Mary relies, and still were insufficient in those cases to prevent retroactive application of the statutes.

Mary's reliance on *In re Marriage of Howell* (2011) 195 Cal.App.4th 1062, 1071, quoting *Carter v. California Department of Veterans Affairs* (2006) 38 Cal.4th 914, 922, for the broad proposition that "'a statute might not apply retroactively when it substantially changes the legal consequences of past actions, or upsets expectations based on prior law'" is not persuasive in light of the case law specifically addressing retroactivity and section 4325. Indeed, the statement upon which Mary relies is dicta, as the court in *Howell* found the Legislature did not intend to allow retroactive enforcement of the law discussed there (*Howell*, at p. 1074), and the court in *Carter* found the statute there merely clarified existing law, so that retroactivity was not at issue (*Carter*, at p. 930).

Section 4, subdivision (h) does not bar retroactive application of section 4325.

**b.** *The extent of reliance on the former law*

The second prong of the test the court is required to apply to determine whether an exception should be made to the general rule that Family Code sections apply retroactively is "'"[t]he extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions."' [Citations.]" (*Fellows*, *supra*, 39 Cal.4th at p. 189.) In *Fellows*, the father seeking to assert the defense of laches alleged he had acted in reliance upon the old law inasmuch as he had paid all child support due, but had failed to preserve written proof of payment. (*Id.* at p. 187.) He claimed the change in the law imposed a new duty to keep written records, and that he relied on existing law in failing to keep records longer. (*Ibid.*) The court held, however, that any alleged reliance by the father was "not reasonable" (*id.* at p. 190), observing "prudence would have counseled preservation" of such records even before the new law was enacted, that the prospect of success on an equitable defense such as laches is "always uncertain," and that elimination of the defense did not create any new duty (*id.* at p. 188).

Here, Mary argues she had no notice that her plea in her criminal case "would have acted as a permanent and total bar to her receiving spousal support in the event she and Anand divorced." Mary overstates her case, as the plea created only a rebuttable presumption, not the total bar she claims. In addition, as in *Fellows*, *supra*, 39 Cal.4th at page 188, "prudence would have counseled" Mary to take care in pleading anything but *not guilty* to an act of domestic violence, as family courts at the time of the plea were required to consider "[d]ocumented evidence of a history of domestic violence" in ordering spousal support. (Former § 4320, subd. (h).)

In the same vein, Mary appears to argue that "her willingness to enter" a plea of no contest "would have been significantly impacted" if section 4325 had existed at the time of the plea. Mary has not asserted that her willingness to enter a plea of no contest actually was impacted or brought to our attention any declaration stating that it was.

11

In addition, Mary argues that Anand was not in danger or fearful during the water bed incident, and consequently, she was not guilty of wielding the knives in a "threatening manner." This argument is unsound. Her plea was to an offense whose elements included exhibiting a weapon "in a . . . threatening manner." (Pen. Code, § 417, subd. (a)(1).) Mary cannot be heard to argue here that she did not exhibit the knife in a threatening manner.

Mary further claims she relied to her detriment upon the stipulated judgment for ongoing support. The family court disagreed and substantial evidence supported its determination.

Mary's alleged reliance is insufficient to preclude retroactive application of section 4325.

### 2. *Section 4, subdivision (f) does not bar retroactive application of section 4325*

Section 4, subdivision (f) provides: "No person is liable for an action taken before the operative date that was proper at the time the action was taken, even though the action would be improper if taken on or after the operative date, and the person has no duty, as a result of the enactment of the new law, to take any step to alter the course of action or its consequences."

Without citing supporting authority, Mary argues "the term 'liable'. . . means that a new law shall not subject a person to significantly and substantively different consequences than would have been the case prior to the enactment of the law" and contends without supporting factual declarations that she might not have pleaded no contest to violating Penal Code section 417, subdivision (a)(1) if she had known "that the plea in and of itself would have acted as a permanent and total bar to her receiving spousal support in the event she and Anand divorced." Mary's arguments fail for the reasons stated above in connection with the reliance prong of the retroactivity analysis.

Section 4, subdivision (f) does not bar retroactive application of section 4325.

### B. *The stipulated judgment was modifiable*

We interpret a written instrument de novo unless there is an issue of fact or credibility raised by extrinsic evidence. (*Parsons v. Bristol Development Co.* (1965) 62

Cal.2d 861, 865.) De novo review is appropriate here. The family court's decision to terminate spousal support is reviewed for abuse of discretion. (*Freitas*, *supra*, 209 Cal.App.4th at p. 1073.)

Mary's argument that the stipulated judgment was not modifiable fails because the public policy promoted by section 4325 renders even expressly nonmodifiable stipulated judgments modifiable. In *Cauley*, the husband and wife signed a stipulated judgment which expressly declared it was not modifiable, unless the wife cohabitated with a partner or the husband suffered loss of income due to disability or job loss. (*Cauley*, *supra*, 138 Cal.App.4th at p. 1103.) Following the stipulated judgment, the wife engaged in extreme harassment of the husband and ultimately pleaded guilty to felony aggravated stalking. The Court of Appeal determined that, even though the stipulated judgment contained specific language prohibiting modification, section 3591, subdivision (c) did not bar modification of the stipulated judgment because the public policy against domestic violence outweighed the public policy favoring enforcement of spousal support provisions. (*Cauley*, at p. 1106.) The court noted: "[T]he parties could not have reasonably expected that [the husband] would finance his own abuse by [the wife]." (*Ibid.*)

*Freitas* also affirms the propriety of modifying a judgment, where, as here, the order terminating spousal support postdates the domestic violence conviction but section 4325 has not been considered previously. (*Freitas*, *supra*, 209 Cal.App.4th at p. 1070.) The court there rejected the husband's argument that the order of spousal support could not be modified absent a material change of circumstances occurring *after* the support order. The court noted the husband undisputedly had suffered a qualifying domestic violence conviction in 2006 and the family court had not considered section 4325 at the time it ordered temporary spousal support in 2010. (*Freitas*, at p. 1071.)[3]

---

[3] Mary also contends the stipulated judgment between her and Anand is not modifiable based on section 3591, subdivision (c), which provides that support agreements cannot be modified if they contain a "specific" provision precluding modification. The line of cases exemplified by *Fukuzaki v. Superior Court* (1981) 120

13

**C.** *Anand did not waive his right to assert the presumption of section 4325*

Waiver is an issue of fact tested on appeal under the substantial evidence standard. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1052–1053, abrogated on other grounds as stated in *DeBerard Properties, Ltd. v. Lim* (1999) 20 Cal.4th 659, 668.) The court here found that no waiver had occurred. Therefore, we must affirm unless the decision is not supported by substantial evidence.

The essence of Mary's waiver argument is that Anand impliedly waived his right to assert a right he did not know about by failing to assert it. In other words, she claims that, by paying spousal support for 10 years, Anand gave up the right to stop paying when he learned he could. Mary also argues that the right was waived because Anand had an attorney who could have informed him of his rights but failed to do so.

In support of these arguments, Mary cites authority that finds waiver when a party's conduct "'is so inconsistent with *an intent* to enforce the right as to induce a reasonable belief that such right has been relinquished.'" (Italics added.) "All case law on the subject of waiver is unequivocal: '"Waiver always rests upon intent."'" (*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.* (1994) 30

---

Cal.App.3d 454 construes the requirement of specificity narrowly, holding language such as the language in the agreement in this case is insufficiently specific to deprive the court of its ability to modify the agreement. (*Fukuzaki*, at p. 458.)

Mary argues that citation in the agreement to *In re Marriage of Vomacka*, *supra*, 36 Cal.3d at pages 465–466, and *In re Marriage of Brown*, *supra*, 35 Cal.App.4th at page 790, shows an intent to make the agreement nonmodifiable. This argument fails as well because the cases are inapposite. The courts in those cases addressed situations where a spouse sought to extend support payments beyond the termination date in the agreement. Reading the agreement here in light of those cases, it appears they likely were cited to assure that a court did not *increase* Mary's spousal support beyond the annual cost-of-living increase provisions. At best, citation in the agreement to those cases is ambiguous, not a specific prohibition against modification.

As to Mary's res judicata argument, because termination of support payments was not prohibited, the judgment was not final as to termination of such payments and thus did not have res judicata effect. (E.g., *In re Marriage of Buckley* (1982) 133 Cal.App.3d 927, 935.) Consequently, Mary has not shown the family court abused its discretion in terminating her spousal support. (See *Freitas*, *supra*, 209 Cal.App.4th at p. 1073.)

14

Cal.App.4th 54, 60.) We fail to see how anyone could reasonably believe Anand intended to relinquish a right he did not know about by failing to assert it.

The fact that Anand's lawyer failed to advise him of the existence of section 4325 does nothing to show Anand intended to waive the right to assert it.

Mary has failed to carry her burden of establishing the affirmative defense of waiver, and the family court's determination that no waiver occurred is supported by substantial evidence.

**D.** ***Anand was not equitably estopped to assert the presumption of section 4325***

Where, as here, the facts are disputed, we test determinations as to equitable estoppel based on the substantial evidence standard. (E.g., *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 483–484.)

"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.) The family court found as a matter of fact that Mary was not prejudiced by any delay by Anand in asserting his rights. Substantial evidence supported the court's finding. Moreover, a party's reliance is required to be reasonable. (*E.g.*, *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 489.) As we have concluded previously, if there had been reliance by Mary, it would have been unreasonable, as the husband's was in *Fellows*, *supra*, 39 Cal.4th 179. Therefore, Mary has failed to establish the elements of equitable estoppel.

Mary also contends Anand is equitably estopped to assert the presumption of section 4325, as it would be "unconscionable" to allow him to do so. As our discussion of the state interest in enforcing section 4325 reveals, Anand is the party viewed by the state's public policy as having been subjected to an unfair and unconscionable burden in paying support to an abusive spouse. The equities therefore do not favor Mary over Anand.

Nor does the fact that Anand was represented by counsel who failed to tell him about section 4325 diminish the equities favoring Anand.

Mary's equitable estoppel argument is untenable.

## DISPOSITION

The family court's August 29, 2012 order terminating Mary Kelkar's spousal support effective September 1, 2012, is affirmed. Anand Kelkar is to recover his costs on appeal.

CERTIFIED FOR PUBLICATION.


MILLER, J.*

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.