Filed 2/26/16  Bufkin v. Bufkin CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANITA JEAN BUFKIN, | B262030 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PD055429) |
| v. | |
| GREGERY EDWARD BUFKIN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan L. Lopez-Giss, Judge.  Affirmed.

Law Offices of T. Matthew Phillips and T. Matthew Phillips for Defendant and Appellant.

Law Offices of Davisson & Davisson, Daniel B. Davisson and Sandra R. Davisson for Plaintiff and Respondent.

_____

Gregery Edward Bufkin (Gregery[1]) appeals from a postjudgment order denying him spousal support. Gregery contends that the trial court erred because its decision was "based solely on a domestic violence restraining order" entered against him postjudgment. We disagree. The record shows that the trial court based its denial on factors unrelated to the restraining order, including whether Gregery was disabled and unable to work. Because the trial court did not abuse its considerable discretion in denying spousal support to Gregery, we affirm.

## BACKGROUND

### I. The dissolution action

Gregery and Anita Jean Bufkin (Anita) were married on May 31, 1986. Twenty-six years later, on January 21, 2013, they separated. On January 30, 2013, Anita filed for divorce. Judge Lloyd C. Loomis conducted a bench trial from May 19-20, 2014. On June 27, 2014, Judge Loomis issued his ruling.

On October 7, 2014—after the court had received the parties' judgment package, but before a judgment was issued—Anita filed a request for a domestic violence restraining order against Gregery. On that same day a temporary restraining order was issued (the TRO).

On October 15, 2014, a dissolution judgment was entered by the trial court, dividing and assigning various assets and property to the parties. However, with regard to spousal support, the trial court reserved the issue "for a later determination." In deferring its decision on spousal support, the court stated that Gregery "may very well be entitled to spousal support," but identified "several issues pending" that would affect a spousal support determination, including the following: whether Gregery could "physically perform his job" as a sheet metal worker; whether Gregery, if he was able to work and found work, would "have to return the pension benefit he has received"; and "the results of [Gregery]'s application for Social Security Disability." The court did not

---

[1] We refer to the Bufkins by their first names for the sake of clarity, intending no disrespect.

discuss or otherwise refer to the TRO or to Anita's pending request for a more permanent restraining order in either the judgment or in any of its supporting attachments.

On December 5, 2014, the trial court granted Anita's request for a domestic violence restraining order against Gregery, prohibiting him from coming with 100 yards of Anita, her home, car or workplace for two years.

## II.     The denial of spousal support

On November 24, 2014, Gregery moved for spousal support. In support of his motion, Gregery stressed two facts: (1) the duration of his "long-term marriage"; and (2) his "[e]mployability" or lack thereof. According to Gregery, he "was forced to retire with a back injury" and "can no longer physically perform his former job duties."[2] Gregery noted, however, that his application for Social Security disability benefits had been denied. Despite his purported "disability," and despite the risk of losing future pension benefits and being forced to repay "all benefits accrued to date," Gregery averred that, as he was only 53 years of age, he was actively "looking for work." Although Gregery provided supporting documentation for a number of other issues, such as his monthly medical insurance costs, he did not provide any documentation regarding his job search efforts. In addition, the documentation that he submitted regarding his "current disability status," did not show that he was disabled, but only that he had applied for disability benefits and was currently appealing the denial of his application.

On December 22, 2014, Anita filed her opposition to the motion, advancing two central points: (1) the restraining order against Gregery; and Gregery's ability to support himself. With regard to this second point, Anita argued that while Gregery did retire, he "did not retire on a disability pension." She argued further that following his retirement, Gregery was able to get a full-time job with the Hart School District "that d[id] not jeopardize his pension."

---

[2] Although Gregery identifies himself as a former "sheet metal worker," the record is silent with respect to what exact duties his former job required.

3

On January 2, 2015, Gregery filed his reply brief in support of his motion. With regard to the restraining order, Gregery argued that the alleged abuse was, in his view, quite minor—he merely removed the locks to the front door of the family home[3]—and, as a result, Anita suffered "no damages," "no injuries," and no "out-of-pocket expense" from the incident. In addition, Gregery noted that he himself was a victim of domestic violence by Anita in 2010, when she "pull[ed] a 9 mm. handgun on [him] and point[ed] it at his head."[4] As for his employability, Gregery argued that although he "needn't get a job because . . . he is retired," he, nonetheless, "actively seeks employment." He argued further that his job prospects, however, were "dismal" because of "his mountain of employment-related medical bills, . . . plus his many prescription painkillers, not to mention that [he] now has a restraining order on his record, which may extinguish any hope of becoming employed." Although he submitted documentation regarding his medical bills, he once again elected not to submit any supporting evidence regarding his job search or his purportedly "dismal" job prospects.

On January 9, 2015, Judge Susan Lopez-Giss heard oral argument on Gregery's motion for spousal support. Gregery focused his argument on the restraining order, asserting that Anita had actually "failed to prove the allegations of her complaint" and that the only reason why the order was issued was due to his spontaneous admission in open court that he had in fact removed the locks. For her part, Anita focused her argument on Gregery's employability, arguing that Gregery's retirement was "not a disability retirement" and that his application for Social Security disability benefits had been denied.

---

[3] In opposition to Anita's request for reimbursement for certain repairs to their home that she authorized, Gregery submitted an email to a third-party contractor in which he stated that he was served with the TRO because he removed all of the bedroom doors to their home.

[4] In his reply papers, Gregery cited but did not provide a copy of a "L.A. County Sherriff's Department Report" relating to the 2010 handgun incident.

4

The trial court denied the motion, explaining that Gregery's purported disability did not prevent him from finding employment: "At this point in time, I'm going to continue to reserve jurisdiction over spousal support. It's [been] six months since the [trial] and if there's been an order that [you are] not disabled or Social Security says you're not disabled, you can appeal it. You need to get a job. And what I'll tell you, what is basically making me even more sure about this is you wrote a letter and you just testified that you could do the repairs on your house." On February 17, 2015, Gregery filed a timely notice of appeal.

## DISCUSSION

### I.      Standard of review

"[T]he 'purposes of spousal support inevitably vary from case to case, depending upon the parties and the facts and circumstances of the case.' [Citation.] 'The facts and the equities in one case may call for no spousal support, or for very short-term support . . . . At the other end of the spectrum are cases where the purpose of spousal support is to provide financial assistance to the supported spouse until . . . death . . . . In between are the myriad of factual circumstances which the trial court must consider in making its order for purposes which vary from case to case.'" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 312 (*Cheriton*).)

"Given the variety of purposes to be served by spousal support, it follows that the trial court must be invested with broad discretion in fashioning such awards." (*Cheriton*, *supra*, 92 Cal.App.4th at p. 312) "'"[A]ppellate courts must act with cautious judicial restraint in reviewing these orders."'" (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 207.) "'A trial court's exercise of discretion will not be disturbed on appeal unless, as a matter of law, an abuse of discretion is shown—i.e.,—where, considering all the relevant circumstances, the court has "exceeded the bounds of reason" or it can "fairly be said" that no judge would reasonably make the same order under the same circumstances.'" (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480, italic omitted.)

5

**II.** **The denial of spousal support was not an abuse of discretion**

Family Code[5] section 4330, subdivision (a), provides: "In a judgment of dissolution of marriage . . . of the parties, the court may order a party to pay for the support of the other party an amount, for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances as provided in Chapter 2 (commencing with Section 4320)." In ordering or denying spousal support, "the trial court *must* consider and weigh all of the circumstances enumerated in [section 4320], to the extent they are relevant to the case before it." (*Cheriton*, *supra*, 92 Cal.App.4th at p. 302, fn. omitted.) The very first of the enumerated circumstances in section 4320 is "[t]he marketable skills of the supported party." (§ 4320, subd. (a)(1).) The other statutory factors include, inter alia, the following: the needs of each party, based on the marital standard of living; the obligations and assets of each party; the duration of the marriage; the ability of the supported spouse to engage in gainful employment without undue interference with the children's interests; the age and health of the parties; the balance of hardships to the parties; the goal that the supported party be self-supporting within a reasonable period of time; and any other factors deemed just and equitable by the court. (See § 4320, subds. (b)–(n).)

Among section 4320's list of factors is a consideration of domestic violence. Section 4320, subdivision (i), requires the trial court to consider "[d]ocumented evidence . . . of any history of domestic violence" when ordering spousal support. Section 4320, subdivision (m), provides: "The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4324.5 or 4325." Together, these provisions represent "a legislative determination that victims of domestic violence not be required to finance their own abuse." (*In re Marriage of Cauley* (2006) 138 Cal.App.4th 1100, 1107, fn.

---

[5] All further statutory references are to the Family Code unless otherwise indicated.

6

omitted.) In addition, the Family Code establishes a presumption that, unless rebutted, operates to bar the making of an initial spousal support award. (See § 4325; *Cauley*, at pp. 1107–1108.) In rebutting the presumption, the court may consider evidence of the convicted spouse's history as a domestic violence victim at the hands of the other spouse and any other factors that it "deems just and equitable, as conditions for rebutting this presumption." (See § 4325, subd. (b); *In re Marriage of Priem* (2013) 214 Cal.App.4th 505, 510.)

Here, the trial court's decision to deny spousal support was not based "solely" or even primarily on the restraining order.[6] Rather, it was based on Gregery's ability to support himself. Given the evidence that was presented—Gregery's relative youth, his non-disability-related retirement, the denial of his application for Social Security disability benefits, his ability to find postretirement full-time work that did not jeopardize his pension, and his active search for employment—and given the evidence that was not presented, such as evidence showing that Gregery had been repeatedly turned down for employment, we cannot say that the trial court's decision exceeded the bounds of reason or that no judge would reasonably make the same order under the same circumstances.

In short, the trial court—contrary to Gregery's core contention on appeal—denied the motion for spousal support for reasons unrelated to the restraining order and, in so doing, did not abuse its discretion. Accordingly, we affirm.

---

[6] Indeed, because the focus was on Gregery's employability, it appears that the trial court implicitly found that Gregery had rebutted the presumption against spousal support arising out of the restraining order, a presumption which the trial court was well aware.

**DISPOSITION**

The order denying the request for spousal support is affirmed. Anita Jean Bufkin shall recover her costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

8