Filed 6/16/22 Marriage of Davis (Price) and Davis CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of KENDRA F. DAVIS (PRICE) and GRANT DAVIS, JR. | |
| KENDRA F. DAVIS (PRICE), Respondent, v. GRANT DAVIS, JR., Appellant. | F080554 (Tulare Super. Ct. No. VFL228152) **OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County. Brian N. Chase, Commissioner.

Grant Davis, Jr., in pro. per., for Appellant.

Maroot, Hardcastle & Jolly and Wayne Hardcastle, for Respondent.

-ooOoo-

## INTRODUCTION

Appellant Grant Davis, Jr. (Grant) appeals from a judgment of marital dissolution from Kendra Price Davis (Kendra).[1]  Grant contends the trial court erred by incorrectly valuing the parties' home and the equity in the home for purposes of dividing their marital assets.  Grant also contends the trial court erred by denying him spousal support, denying his interest in the parties' tangible community property, denying him an award of monies for living expenses while living outside the parties' home prior to dissolution, and denying him an interest in Kendra's retirement account.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Grant and Kendra married on February 14, 2009, and separated on August 16, 2018.  Together, they had three children.  In addition, Grant had one child from a prior relationship and Kendra had two children from a prior relationship.  Grant was a stay-at-home father, caring for the children while Kendra worked a full-time job.

On November 5, 2018, Kendra petitioned for dissolution of her marriage (divorce petition) to Grant in the Tulare County Superior Court.[2]  In her divorce petition, she sought legal and physical custody of the children with supervised visitation rights for Grant, an order terminating the court's jurisdiction to award support to Grant, confirmation of their residence and certain specified assets as Kendra's separate property, and a determination of the parties' rights to specified community and quasi-community assets and debts including, without limitation, the parties' residence.  In her petition, Kendra valued the residence at $325,000 with debt of $243,105.

---

[1] It is common practice to use the parties' first names in family litigation "to both assist the reader and humanize a decision which seriously affects the litigants' lives." (*In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 803, fn. 2.)

[2] The record on appeal includes documents pertaining to family law proceedings that preceded the filing of Kendra's divorce petition.  The record also includes post-petition proceedings to modify orders issued prior to the filing of Kendra's divorce petition.  We deem those proceedings and related documents irrelevant to the issues presented on appeal.  Consequently, we do not discuss them in this opinion.

On December 10, 2018, Grant, acting in pro. per., filed his response to Kendra's divorce petition requesting dissolution of the marriage, joint custody of the parties' natural children, spousal support, a determination of the parties' rights to community and quasi-community property, including the residence and Kendra's "LCSC Private Practice," which he valued at $160,000, Grant's student loans, and past child support due and owing in the amount of $85,459.05.[3]

On December 14, 2018, Grant filed an amended response to the petition. In it, Grant identified additional community and quasi-community assets and debts along with the assets and debts previously disclosed by him. He also requested an order that Kendra pay his attorney fees and retainer. He did not renew his request for spousal support in his amended response.

On or about May 1, 2019, Grant obtained counsel to represent him in connection with the divorce petition proceedings. On August 13, 2019, the parties' stipulated to allow the Honorable Brian N. Chase, Commissioner, to hear the case.

Trial commenced on September 10, 2019. Both parties testified at trial over the course of two nonconsecutive days. Trial concluded on the third day, October 25, 2019. The trial court issued rulings from the bench and a minute order was prepared to conform to those rulings.

On November 21, 2019, a judgment of marital dissolution was entered by the trial court. The judgment provides, as follows: (1) the parties were returned to their status as single persons as of October 25, 2019; (2) Kendra was restored to her name Kendra Faith Price; (3) Kendra was awarded sole legal and physical custody of the parties' biological children with supervised visitation rights awarded to Grant; (4) the court found the

---

[3] Prior to filing his response to the divorce petition, Grant requested a change of venue to Fresno County. Kendra opposed the request, and it was subsequently denied on January 28, 2019.

presumptions contained in Family Code section 3044 are applicable to the case;[4] (5) Grant was ordered to pay Kendra $1,353 per month for child support commencing July 1, 2019, and the court found him in arrears of $5,412; (6) each parent was required to pay one-half of all childcare costs to allow a parent to work or trained for employment.

In the judgment, the trial court further found "each party has voluntarily waived any right to receive spousal support one from the other," and "[t]he parties further agreed and based thereon the Court orders that the Court's jurisdiction to award spousal support … shall forthwith terminate. The court ordered each party "shall pay their respective attorney fees and costs incurred in [the] action."

The trial court allocated the following assets and debts to Kendra: the parties' residence and the mortgage that encumbered it, a Honda vehicle, the bank accounts in her name, a term life insurance policy obtained through her employer, her retirement account, her student loan debt incurred prior to the marriage, and various additional debt obligations. The court allocated to Grant a Chevy Vehicle and the debt associated with it, various musical equipment valued at $8,000, and the household goods in his possession.

The judgment obligated Kendra to pay Grant $1,777 to equalize the division of the community estate. Said amount was to be deducted from the child support arrearages Grant was found to owe Kendra. Per the judgment, Grant is required to pay Kendra $100 per month toward the remaining child support arrearages. Grant's preexisting, past due child support (related to his child from another relationship) in the amount of $85,459 was confirmed as his separate obligation. The court also reserved jurisdiction over a pending personal injury action in favor of Grant and other matters.

---

[4] All statutory references are to the Family Code unless otherwise noted.

Following entry of the judgment, Grant's attorney withdrew as his attorney of record. On December 27, 2019, Grant, acting in pro. per., timely appealed the judgment of marital dissolution.[5]

Additional facts relevant to the issues on appeal are discussed below as necessary.

## DISCUSSION

### I.       Standard of Review

"Under … section 2550, the court must divide the community estate of the parties equally. 'This task constitutes a nondelegable judicial function [citation] which must be based upon substantial evidence [citation].' [Citation.] Section 2552 concerns the method the court should use to value the property. As long as the court exercises its discretion in a legal manner, its decision will be affirmed on appeal if there is substantial evidence to support it. [Citation.] Similarly, we review a judgment for … spousal support under the abuse of discretion standard [citation], but the trial court's discretion must be exercised within the limits of the applicable statutes." (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572, fn. omitted (*Campi*).)

"The trial court's findings on the characterization and valuation of assets in a dissolution proceeding are factual determinations which are reviewed for substantial evidence…. [A]s long as that determination is within the range of the evidence presented, we will uphold it on appeal.' " (*Campi*, *supra*, 212 Cal.App.4th at p. 1572.)

---

[5] On December 16, 2019, Grant, acting in pro per, filed a "REQUEST FOR ORDER" (RFO) asking the trial court to "make a decision concerning the division of the community furnishings located at [the parties' residence]." Aside from a related fee waiver request and a request to continue the RFO hearing, the record does not include any further reference to the RFO or its outcome. We do not presume this opinion will resolve the issues presented by the RFO. As noted in part IV. of this opinion, the trial court reserved jurisdiction over "division of the parties['] household goods and furnishings" that are in Kendra's possession. Accordingly, as to such matters, it is appropriate Grant seek his remedy at the trial court level.

5.

" ' "In determining whether a judgment is supported by substantial evidence, we may not confine our consideration to isolated bits of evidence, but must view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the trial court. [Citation.] We may not substitute our view of the correct findings for those of the trial court; rather, we must accept any reasonable interpretation of the evidence which supports the trial court's decision." ' " (*Lee v. Amazon.com, Inc*. (2022) 76 Cal.App.5th 200, 222.)

## II. The Trial Court's Valuation of the Parties' Residence Was Not Error

On appeal, Grant contends the trial court erred by incorrectly assigning a value of $262,000 for the parties' residence. He argues the parties agreed on a value of $325,000 for the residence by stating that value in their respective pleadings (i.e., Kendra's divorce petition and Grant's response and/or amended response thereto) and the court was required to adopt that valuation. He further argues the court used a 2018 appraisal to establish the home's value in violation of section 2552 and his due process rights. Grant denies he stipulated to the court's valuation of the residence and alleges it sold for $315,000 in April of 2020.

We conclude the trial court did not err in establishing the value for the residence. The record reflects that counsel for both parties agreed to the $262,000 valuation and is supported by substantial evidence. We discuss those issues below.

### A. *The Parties' Stipulated to the Value of the Residence*

At trial, after some questioning of Kendra by her counsel concerning the parties' residence and related issues, the following exchange occurred:

> "[KENDRA'S COUNSEL]: Your Honor, I believe that that's all the questions I have on this particular issue. And if counsel agrees that the Propertizer[6] statements include the correct foundation and allocation of the

---

[6] Here, the parties and the court used a CFLR Propertizer, a type of software designed to assist in the division of community assets and debts and commonly used by

6.

various properties and debts we would – I would submit the division of property based upon that agreement.  Counsel, I think that's what we discussed.

"[GRANT'S COUNSEL]:  Yeah.  Yes."

The trial court then indicated it desired additional information concerning payments toward the purchase of the residence, and the examination of Kendra resumed. Following that questioning, the following discussion occurred between the court and both parties' counsel:

"THE COURT:  Do we have a stipulation as to the current value? Or you will figure that out after—

"[KENDRA'S COUNSEL]:  The last appraisal.

"THE COURT:  The $260,000?

"[KENDRA'S COUNSEL]:  $262,000.

"[GRANT'S COUNSEL]:  I think it's $262.

"THE COURT:  And the debt is $205.

"[KENDRA'S COUNSEL]:  The debt is $243,000.

"THE COURT:  Give me that number again.

"[KENDRA'S COUNSEL]:  It's – you have the mortgage statement there.  $243,000 and some more.

"THE COURT:  Oh yeah. I do have that.  $243,105.

"[KENDRA'S COUNSEL]:  And, your Honor, I believe the Court has both the property schedules referred to if you want them marked as exhibits we can do that.

"THE COURT:  I'll just use them for purposes and won't mark them.  Was that – do we have that appraisal?

"[GRANT'S COUNSEL]:  2018 was $263.  August of 2018 is $263.

---

family law courts and practitioners.  (https://store.legal.thomsonreuters.com/law-products/Forms/CFLR-Propertizertrade/p/106243700.)

"THE COURT:  That's the most recent

"[GRANT'S COUNSEL]:  That's the most recent.

"[KENDRA'S COUNSEL]:  That was conducted by counsel on – by [Grant's counsel] on August 1st, 2019.  And $262—

"THE COURT:   The most we have—

"[GRANT'S COUNSEL]:  Whatever.

"THE COURT:  So the most we have about $20,000 in equity.

"[GRANT'S COUNSEL]:  Yeah.

"[KENDRA'S COUNSEL]:  At most."

"[¶] … [¶]  THE COURT:  Okay.  So you have no further questions for [Kendra], is that what you said?

"[KENDRA'S COUNSEL]:  Not as long as we have stipulation with respect to the foundation and property schedule.

"[GRANT'S COUNSEL]:  We'll stipulate to that absolutely.  The foundation.

"THE COURT:  All the figures in the Propertizer are agreed to?

"[GRANT'S COUNSEL]:  Yes."

Closing arguments were then deferred to the following week.

When trial resumed, Kendra's counsel argued: "Now, counsel and I had agreed that the figures set forth in the prop[ertiz]er statement provided to the Court were correct with the exception of the referencing to the house.  The latest appraisal and the testimony concerning the value of the house valued at $262,000.00.  And that is part of the record and I believe we had a stipulation to that [e]ffect.  So there is some equity in the home and the question is whether or not that asset is community property or separate property…."  Kendra's counsel argued the residence should be considered separate property rather than community property.  Although Grant disputed the characterization of residence as separate property, consistent with his prior statements to the trial court,

Grant's counsel did not dispute the parties had arrived at an agreement as to the value of the residence. The trial court ruled the residence was community property.

The trial court then expressed uncertainty as to whether Kendra intended to keep or sell the residence. In response, Kendra's counsel stated, "Your Honor, in that regard [Kendra] would intend to keep the house. The following exchange between counsel and the court followed:

> "THE COURT: All right, so then we have established – I think we established the value of $262,000 [for the residence] .
>
> "[KENDRA'S COUNSEL]: We have.

After the trial court prepared a schedule of assets to reflect the judgment of the court, the following exchange took place:

> "THE COURT [to Grant's counsel]: [Y]ou concur that reflects an accurate allocation of all the assets based on the agreements of the parties as well as my rulings with respect to the student loans and the home?
>
> "[GRANT'S COUNSEL]: Yes.
>
> "THE COURT: Okay, so the Court will adopt this dis[s]o master[7] as a reflection of the allocation of assets…."

"[S]tipulations of counsel made in open court in the presence of their clients and taken down by the court reporter," which are then "acted upon by the adverse counsel and the court" are binding on the litigants. (*Linder v. Cooley* (1963) 216 Cal.App.2d 390, 395; see also *Rodriguez-Gonzalez v. Immigration and Naturalization Service* (1981) 640 F.2d 1139, 1141–1142.) " ' "[I]t is entirely proper for the court to accept stipulations of counsel that appear to have been made advisedly, and after due consideration of the facts …," ' " although the court " ' "cannot surrender its duty to see that the judgment to be entered is a just one …." ' " (*In re Elizabeth M.* (2008) 158 Cal.App.4th 1551, 1559.)

---

[7] DissoMaster is a software program commonly used by family law courts and practitioners to assist in determining "guideline child and spousal support payments in the State of California." (Https://childsupportca.com/the-dissomaster-program.)

Here, Grant's counsel's comments to the trial court and opposing counsel indicated his concurrence that the parties had agreed upon a valuation for the residence, and he never disputed that such an agreement had been reached. Moreover, Grant's counsel never argued for a different valuation and never disputed the valuation. The record reflects that Kendra's counsel relied on this agreed valuation in limiting his questioning of his client and the court relied on this stipulated value in dividing the community estate.

We conclude there is substantial evidence the parties' stipulated to a valuation of $262,000 for the parties' residence.

**B.**     ***The Trial Court Did Not Violate Section 2552 or Grant's Due Process Rights***

Grant argues the trial court was bound by the parties' estimation of value of the residence contained in their pleadings and that the court was required to adopt those values in the judgment. We disagree.

Section 2552 provides:

> "(a) For the purpose of division of the community estate upon dissolution of marriage or legal separation of the parties, except as provided in subdivision (b), the court shall value the assets and liabilities as near as practicable to the time of trial.

> "(b) Upon 30 days' notice by the moving party to the other party, the court for good cause shown may value all or any portion of the assets and liabilities at a date after separation and before trial to accomplish an equal division of the community estate of the parties in an equitable manner." (§ 2552; see also *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 436–437 [rejecting argument that "community property must be valued as of date of separation"].)

Although it is true a party may be bound by "well pleaded material allegations or by failure to deny well pleaded material allegations" (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271), the value estimate for the residence contained in Kendra's divorce petition was nearly one year old by the time trial

commenced.[8]   Although the allegation of value was repeated in Kendra's trial brief on May 3, 2019, the trial court had a more recent (and, arguably, more reliable) indication of the home's value – a stipulation that the value of the home based upon an appraisal dated August 1, 2019, was $262,000.[9]   Moreover, it appears the appraisal was procured by Grant's counsel.  Trial commenced the following month in September of 2019.  The appraised value represented the most current valuation of the residence at the time of trial.  As a result, the trial court did not violate section 2552 which required the court to value the property "as near as practicable to the time of trial."  (§ 2552, subd. (a).)

Grant's due process claim is premised on his contention that, under subdivision (b) of section 2552, he was entitled to notice of Kendra's intent to use a date of valuation other than that provided in subdivision (a) of said statute.  Given that the valuation of the residence complied with subdivision (a) of section 2552, we conclude there is no merit to Grant's due process claim.

With regard to the allegation that the property sold for a greater sum in April of 2020, there is no support for this allegation in the record.  Thus, we cannot consider this alleged fact in our disposition.  Moreover, an alleged sale date of April 2020 is approximately six months after conclusion of the trial.  The August 1, 2019, appraisal reflected a valuation closer in time to trial than the alleged sale price in April of 2020.

" 'The trial court possesses broad discretion to determine the value of community assets as long as its determination is within the range of the evidence presented. [Citation.]  The valuation of a particular asset is a factual question for the trial court, and

---

[8] Kendra's divorce petition was filed on November 5, 2018, and trial commenced on September 10, 2019.

[9] Initially, Grant's counsel indicated the appraisal was conducted in August of 2018.  Kendra's counsel corrected him by noting the appraisal was 'conducted by counsel on – by [Grant's counsel] on August 1st, 2019. And $262—," to which Grant's counsel responded, "Whatever."  The record does not include a copy of the appraisal.  However, Grant's counsel did not dispute opposing counsel's assertion that the true date of the appraisal was August 1, 2019.

its determination will be upheld on appeal if supported by substantial evidence in the record.' " (*In re Marriage of Iredale & Cates* (2004) 121 Cal.App.4th 321, 329.) "[A] stipulation is evidence upon which a judgment may be made, and may by itself constitute substantial evidence in support of such judgment." (*State of California v. Workers' Comp. Appeals Bd*. (1980) 101 Cal.App.3d 673, 677.)

No injustice resulted from the trial court's reliance on the parties' stipulation as to the value of the residence established by the August 2019 appraisal. We conclude substantial evidence supports the valuation of the parties' residence. The trial court did not abuse its discretion in determining the value of the parties' residence.

**III.    The Trial Court's Finding the Parties Waived Spousal Support Rights and Agreed to Terminate the Court's Jurisdiction on the Issue is Supported by Substantial Evidence**

Grant contends he never waived spousal support or requested termination of the trial court's jurisdiction on the issue. He contends, "substantial evidence supports [his] position that he did not waive spousal support." (Bold type and capitalization omitted.) Grant misconstrues the standard of review.

"We do not review the evidence to see if there is substantial evidence to support the losing party's version of events, but only to see if substantial evidence exists to support the verdict in favor of the prevailing party." (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1245.) "[W]hen the 'findings of fact are challenged in a civil appeal, we are bound by the familiar principle that "the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.]' [Citation.] 'In applying this standard of review, we "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor.…" [Citation.]' [Citation.] ' "Substantial evidence" is evidence of ponderable

legal significance, evidence that is reasonable, credible and of solid value.' " (*Id*. at pp. 1245–1246.)

"Waiver is an issue of fact tested on appeal under the substantial evidence standard." (*In re Marriage of Kelkar* (2014) 229 Cal.App.4th 833, 846.) "The waiver of an important right must be a voluntary and knowing act done with sufficient awareness of the relevant circumstances and likely consequences." (*Roberts v. Superior Court* (1973) 9 Cal.3d 330, 343.) As demonstrated below, there is substantial evidence Grant knowingly and voluntarily waived any claim he might have to spousal support at the time of trial and at any point thereafter.

On the final day of trial, October 25, 2019, the trial court, having heard the evidence and the closing arguments of counsel, indicated it was inclined to not award spousal support on that day but that it would reserve jurisdiction on the issue. Specifically, Commissioner Chase stated: "Because of [Grant's] attendance in school right now, my inclination will be to set the spousal support at a reservation. I don't find that it's necessary at this time and I don't find that either party needs it in order to support themselves if they made an effort to do so, but in the absence of a stipulation at this point I'm not inclined to terminate it."

Thereafter, Grant's counsel expressly indicated Grant was willing to terminate the trial court's jurisdiction over spousal support. The court sought confirmation by asking, "Do you want to terminate it?" To which Grant's counsel stated, "Yes, we'll terminate it. The court, addressing Grant directly, stated, "All right. I hear a stipulation brewing. So let me just ask you, [Grant], you understand that by agreeing to terminate spousal support today that in the event you need spousal support from [Kendra] in the future you would not be able to obtain that after today no matter what happens?" Grant responded, "Yes, sir." The court then asked whether Kendra also agreed, to which she responded, "I agree."

The trial court then stated, "All right, I find that the parties are knowingly and intelligently requesting that the spousal support issue be terminated. I'm going to adopt that stipulation as the order of the Court, terminate the Court's jurisdiction to award spousal support to either party for any reason whatsoever hereafter. And also there's been no spousal support order made in the past so there's no spousal support arrears to be addressed."

Thus, once the trial court advised the parties and their counsel it was not going to award spousal support to either party at the time of its ruling but was not inclined to terminate jurisdiction over the issue, Grant's counsel expressly and unequivocally indicated Grant's desire to terminate the court's jurisdiction. The court, to its credit, then questioned Grant directly to ensure Grant understood that by terminating the court's jurisdiction, Grant would thereafter be barred from ever seeking spousal support from Kendra in the future. The issue was presented squarely to Grant, and he replied affirmatively.

Although Grant accuses the trial court of coercing him to waive spousal support and agree to a termination of the court's jurisdiction over the issue of spousal support, our review of the record reveals no such coercion by the court, and Grant has not cited anywhere in the record where such alleged coercion occurred.[10]

---

[10] In his opening brief, Grant contends, "The court dictatorially told [him], 'Look this is the way it is going to happen, you're leaving with nothing, just like I did in my divorce and that is the way it[']s going to be.' " Elsewhere in his brief, Grant contends, "he never agreed to waive permanent spousal support and under the duress of the commissioner … was ordered to mutually agree." We have searched the reporter's transcript and clerk's transcript for any statement of this nature and have found none. Grant does not cite to anywhere in the record where such a statement may be found.

We conclude substantial evidence exists to support the trial court's finding that Grant knowingly and voluntarily relinquished his right to an award of spousal support and agreed to terminate the court's jurisdiction over the issue.[11]

---

[11] Grant makes several arguments that are either mooted as a result of our determination that substantial evidence supports the trial court's findings on spousal support or are without factual and legal support. We address them briefly below.

Grant contends, without citation to authority, that he objected to the trial court's spousal support findings by "not signing final court documents" on the issue of the spousal support waiver. In making this contention, Grant appears to be referring to the judgment itself and the fact his attorney (not Grant) signed the judgment, approving it as to form and content – a common practice when counsel agrees that a proposed form of judgment conforms to a court's prior ruling. There is no requirement that a party or his attorney sign a proposed form of judgment and, it follows then, that failure to do so cannot be construed as an objection. In any event, Grant's waiver and agreement to terminate the court's spousal support jurisdiction preceded the judgment and a belated objection would have had no effect on the court's determination. (See *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 984 [belated objection forfeits issue on appeal].)

Grant also argues the facts demonstrate he would be entitled to an award of spousal support under section 4320. We need not consider this contention. As stated in the body of this opinion, Grant knowingly and voluntarily waived any right to spousal support.

Finally, Grant argues that the agreement to waive spousal support is tantamount to a settlement agreement which must comply with Code of Civil Procedure section 664.6. In that regard, he contends "a trial court should consider whether (1) the material terms of the settlement were *explicitly defined*, (2) the supervising judicial officer questioned the parties regarding their understanding of those terms, and (3) the parties expressly acknowledged their understanding of and agreement to be bound by those terms," citing *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911, italics added. Assuming, without deciding, that Code of Civil Procedure section 664.6 has application to the waiver issue, the three-part test set forth in *Assemi* was met here. The trial court's advisement to Grant was clear and left no doubt that, by agreeing, Grant would be forever barred from seeking spousal support from Kendra. The court questioned Grant whether he understood this, and Grant replied affirmatively.

15.

**IV. Grant's Claims Concerning Household Goods and Furnishings Are Not Ripe for Appeal – His Remedy is in the Trial Court**

Grant contends the trial court "was prejudicial in the divisions of the family property; the household furnishings have all come up missing and were not equally divided …."

With regard to the household furnishings, the trial court's order reads: "[Kendra] shall receive as her share of the community property assets and obligations the following: … [¶ …¶] … Household goods and furnishing in [Kendra's] possession. The parties shall divide any remaining items as they shall agree. In the event the parties are unable to agree as to the division of the parties['] household goods and furnishings, books, and tools the Court shall retain jurisdiction to divide same." The award differs from the award of household goods in favor of Grant which reads, simply: "[Grant] shall receive as his share of the community property assets and obligations the following: … [¶] … [¶] … Household goods, furnishing in [Grant's] possession."

During direct examination of Grant by his counsel, Grant testified there were "numerous" items of personal property that remained at the parties' residence. The trial court then inquired of counsel, "Was there an agreed upon propertizer?" Kendra's counsel responded, "There was personal property and the values were all resolved by agreement," to which Grant's counsel acceded, "I believe so." However, when the court reviewed the propertizer, it noted, "Actually, there is an entry for furniture and tools for both parties, but it doesn't identify anything and there's no values assigned." The court continued, "So I kind of took that to mean that they would work that out." Grant's counsel responded, "I was kind of thinking that myself." Grant's counsel then asked, "Can the Court reserve jurisdiction over that?" and the court responded, "Exactly. Because I don't think it's in our – in the economic interest not in anybody's time interest here to start hearing testimony about personal property." Kendra's counsel agreed and

16.

the court responded, "I'll simply reserve jurisdiction over the division of any of the personal property items and contents of the residence." Grant's counsel agreed.

The trial court ruled: "[W]ith respect to the remaining personal property items, personal furniture and furnishings, I will assume that the parties will be able to equally divide those assets without Court intervention, but I'll reserve jurisdiction over the issue of those personal items, the furniture, furnishings and contends of their residence in the event the parties are unable. to agree." Thus, the Court did not make a dispositive ruling and, instead, expected that the parties would work out a division of personal property items remaining in the residence, and reserved jurisdiction in the even the parties could not reach agreement. The judgment reflects the court's ruling from the bench.

The trial court's ruling did not result in a final judgment or appealable order with respect to the parties' interest in community household goods or furnishings. If a judgment reserves jurisdiction over a particular issue, "that portion of the judgment is nonfinal and nonappealable." (*P R Burke Corp. v. Victor Valley Wastewater Reclamation Authority* (2002) 98 Cal.App.4th 1047, 1053 [reservation of jurisdiction over attorney fee award].) Accordingly, this court does not have jurisdiction to resolve Grant's claim as to the community's household goods and furnishings. Nor does it have power to render a ruling concerning any alleged disposition of the parties' household goods that occurred after the judgment was rendered.

If Grant desires a judicial determination concerning these household goods and any alleged disposition thereof, he must seek his remedy at the trial court level.

## V. Other Claims of Error Are Forfeited

### A. *Living Expenses While Living Outside the Home*

Grant contends the trial court erred by "fail[ing] to grant awards of monies owed to [Grant] for living expenses while not in the home prior to dissolution." "Every argument presented by an appellant must be supported by both coherent argument and pertinent legal authority. [Citation.] If either is not provided, the appellate court may

17.

treat the issue as waived." (*Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743.) Grant's reference to this claim of error is cursory at best and he did not present this court with any cogent argument or citation to authority in support of this claim of error. Moreover, we note Grant did not request such relief in his amended response to the divorce petition and, as mentioned, waived his right to seek spousal support. As a result, we deem Grant's claim for expenses while living outside the home as forfeited on appeal.

**B.     *Kendra's Retirement Account***

Grant contends the court's award to Kendra of her retirement account in the amount of $30,008 resulted in an unequal division of assets. Grant's appeal of the trial court's award in this regard is flawed. Aside from contending that he should be awarded one-half the value of the retirement account, Grant has provided this court with no analysis, no cogent argument, and no authority (aside from the general statutory authorities which require an equal division of the community estate assets and debts cited in various portions of his brief) to support his argument. Accordingly, Grant has forfeited any claim of error concerning Kendra's retirement account. (*Kaufman v. Goldman*, *supra*, 195 Cal.App.4th at p. 743.) Notwithstanding, given Grant's pro. per. status before this court, we offer the following observations and authority.

Subject to limited exceptions, and absent a written agreement or oral stipulation in open court effecting a disposition of the community estate, i.e., community property and quasi-community property (§ 63), a court must "divide the community estate of the parties equally." (§ 2550.) This rule applies not only to assets, but also to community debts which the court must then assign them as part of the process of equal division. (*Ibid.*, §§ 2551, 2622; *In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 421 ["the equal division of the community property does not consist merely of dividing only the community assets, but of taking into account both the community assets and obligations and dividing equally the residual assets"].)

One cannot evaluate the award to Kendra of her retirement account in a vacuum. In this case, the trial court assigned/awarded numerous community assets and debts to Kendra in accomplishing an equal distribution of the community estate. Among the debts assigned to her were student loans ($23,166) used to support the family while Kendra was in school for her master's degree;[12] various revolving credit card and bank loan debts ($16,075); and the home mortgage ($243,105). Once the community assets and debts were assigned to the parties, the court netted them and determined Grant was entitled to an equalizing payment of $1,776 which was then applied to the child support arrearages he owed to Kendra. Grant has not shown this to be an error. We see no injustice in the judgment that issued.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Kendra.

POOCHIGIAN, ACTING P. J.

WE CONCUR:

FRANSON, J.

SMITH, J.

---

[12] The loans were not used to pay Kendra's tuition. The evidence was without conflict that Kendra received grants that paid her entire tuition.

19.